Strafford,
No. 4435.

WEISS-LAWRENCE, INC.

*v.*

WILLIAM H. RILEY, *Commissioner of Labor.*

Argued November 2, 1955.

Decided December 6, 1955.

*McCabe & Fisher* and *Harold D. Moran* (*Mr. Moran* orally), for the petitioner.

*James M. Riley, Jr., Edward F. Smith* and *Winslow H. Osborne* (*Mr. Riley* orally), for the defendant.

DUNCAN, J.   The agreed statement of facts establishes that this dispute relates to the status under the Unemployment Compensation Act of certain home workers "who lace and bead moccasins on premises other than those of the petitioner" at such times as they may select, without its direct supervision and inspection but according to its specifications, for remuneration which exceeds the minimum requirements of the Federal Fair Labor Standards Act.

The statement also establishes the following facts:

The petitioner is engaged in the business of manufacturing shoes and moccasins at Dover, and furnishes moccasins, thread, lacings,

and wax to individuals in the Dover-Somersworth area who have been trained in lacing and beading at the petitioner's factory and are considered by it to be qualified to do such work away from the factory. The workers lace together certain parts of the moccasins as furnished them by the petitioner, and bead them, supplying their own needles, beads, and any tools which they may choose to utilize. The work is done at the workers' homes. They are paid by the piece, after being furnished a supply of moccasins upon which the work can be completed in a day's time. They are paid weekly, and are under no obligation to accept or continue with the work. They receive no pay for work which does not comply with the specifications, but agree that such work shall be done over.

There was no evidence that other concerns supplied work to the individuals who worked for the plaintiff, although it appeared that such work was available from four other sources. The findings state that similar work was given out by other companies in the area, but that "beading and lacing is a process in the manufacture of moccasins . . . performed away from the factory" and "is not found to be an established trade."

Counsel agreed at the hearing that the essential issue was whether or not the home workers "are in employment under the definition stated in our act . . . a, b and c of [subsection] 3." The material provisions are found in RSA 282: 1 (H):

" 'Employment' (1) . . . means service . . . performed for wages or under any contract of hire, written or oral, expressed or implied . . . (3) Services performed by an individual for wages shall be deemed to be employment subject to this chapter unless and until it is shown to the satisfaction of the director . . . [formerly the Commissioner] that:

"(a) Such individual has been and will continue to be free from control or direction over the performance of such services, both under his contract of service and in fact; and

"(b) Such service is either outside the usual course of the business for which such service is performed or that such service is performed outside of all the places of business of the enterprise for which such service is performed; and

"(c) Such individual is customarily engaged in an independently established trade, occupation, profession, or business."

The petitioner asserts that under these provisions the common-law test of employment was intended to be applied, and that under that test the home workers are clearly not employees, but independ-

ent contractors. The defendant on the other hand relies upon the same provisions to establish that the workers are paid wages "for employment" as defined by the act and that the petitioner is accordingly required to make the contributions required by the act. RSA 282: 6 (A). Neither party considers that the amendment to section 1 of the act, as enacted by Laws 1955, c. 141, s. 3, applies to this petition.

It is familiar doctrine that the governing provisions of the act are to be construed with reference to its underlying purpose (*Auclair* v. *Riley*, 96 N. H. 1, 3) which has been defined as a purpose "to insure in limited measure against unemployment of individuals regularly attached to the labor market which is not occasioned with their consent or by their fault." *Wellman* v. *Riley*, 95 N. H. 507, 510. As the original enactment recited, its purpose was to prevent the spread of unemployment "and to lighten the burden which now so often falls with crushing force upon the unemployed worker and his family." Laws 1935, c. 99. It follows that common-law distinctions between servants and independent contractors, developed in defining the tort liability of an employer for the acts of his employee (see *McCarthy* v. *Souther*, 83 N. H. 29), are not necessarily controlling, nor did the Legislature necessarily intend them to be determinative, of what should constitute employment for the purpose of protecting employees against the economic risks of unemployment. See Willcox, Coverage of Unemployment Compensation Laws, 8 Vand. L. Rev. 245, 247-251; Asia, Employment Relation, 55 Yale L. J. 76, 86.

A majority of the courts of other jurisdictions which have had occasion to construe provisions like those appearing in section 1 (H) of our statute have declined to confine them within common-law concepts of the relationship of master and servant. Thus in *Department of Labor* v. *Aluminum Co.*, 368 Pa. 276, 280, the court said: "Having in mind the broad purposes of this . . . legislation . . . it is our opinion that it was the intention of the legislature to provide for a larger coverage of employees . . . than merely those who would be considered employees under the common law." More recently the Supreme Court of Vermont has adopted a like view. *Vermont Securities, Inc.* v. *Unemployment Com.*, 118 Vt. 197, 201. See also, *Wallace* v. *Annunzio*, 411 Ill. 172, 176. *Cf. Nat. Labor &c. Board* v. *Hearst Publications*, 322 U. S. 111. We are not here concerned with the interpretation of other statutes such as the Federal Unemployment Tax Act, which by congressional amend-

ment is now restricted to common-law employees. Internal Revenue Code of 1954, 26 U. S. C. A., s. 3306(i). *Cf. Glenn* v. *Beard,* 141 F. (2d) 376.

There can be no serious doubt that the home workers in the case before us were in "employment" as defined by section 1 (H) (1) of our statute. They were devoting their time and skills to the business of the petitioner, for pay. *Creameries of America, Inc.* v. *Industrial Commission,* 98 Utah 571, 583-4. Their work was not removed from the coverage of the act by the provisions of section 1 (H) (4). *Cf. Brown* v. *Corriveau,* 99 N. H. 22. In accordance with the requirement of section 1 (H) (3), their services are to be deemed employment subject to the act unless the conditions prescribed by subsections (a), (b) and (c) are met. Applying the tests there prescribed, we reach the conclusion that the findings of the Trial Court are an insuperable obstacle to maintenance of the petitioner's position. The "process" of beading and lacing which was performed away from the factory "is not found to be an established trade." Under the statute the burden was upon the petitioner to satisfy the Commissioner that all of the requirements of section 1 (H) (3), (a), (b) and (c) were met. The absence of a finding that the home workers were "customarily engaged in an independently established trade" ( (c) *supra*) is fatal to the petitioner's contentions.

The express refusal to find the workers engaged in an established trade was permitted by the record. The evidence showed their work to be a process in the petitioner's manufacturing business. While performed without direct supervision, it was closely controlled by the petitioner as to quality and time consumed. See *Peasley* v. *Murphy,* 381 Ill. 187, 193. There was no evidence that their work was "independently . . . established," so that it could or would have continued had the petitioner withdrawn its work from the individuals concerned. See *Industrial Com.* v. *Northwestern Co.,* 103 Colo. 550, 557. There was no evidence that any of the workers held themselves out as prepared to do like work for others, or that they had done such work. *Murphy* v. *Daumit,* 387 Ill. 406, 417. Whether their enterprises could "survive the termination of [the] relationship" with the petitioner (Willcox, *supra,* 264-265), was wholly a matter of speculation. On this state of the evidence a finding that the home workers were engaged in an established trade was not compelled.

Since compliance with section 1 (H) (3) (c) has failed of

establishment, there is no occasion to consider the remaining requirements of subsection (3). Consistently with our statute and the facts of this case as established by the agreed statement of the parties and the findings of the court below, a decree should be entered that the petitioner is obligated to make contributions with respect to payments made to the home workers in question.

*Judgment for the defendant.*

All concurred.