Cheshire
No. 6620

DOROTHY M. VINCENT v. STATE OF NEW HAMPSHIRE & a.

July 24, 1973

*New Hampshire Legal Assistance (Mr. H. Neil Berkson)*, by brief and orally, for the plaintiff.

*Joseph Stewart, Edward F. Smith*, and *Andre J. Barbeau (Mr. Stewart* orally) for the defendant New Hampshire Department of Employment Security.

KENISON, C.J. The primary issue in this case is whether the plaintiff voluntarily quit her job under the unemployment compensation statute (RSA 282:4 A (1) (Supp. 1972)) and regulations so as to be ineligible for benefits. A subsidiary issue is whether plaintiff was available for work in accordance with the requirements of RSA 282:3 C.

Prior to July 26, 1971, plaintiff had been employed on a full-time basis for twenty-four years as a coner and rewinder for the defendant Troy Mills, Inc. On that date she requested and was granted a leave of absence in order to attend to her husband who had suddenly been stricken with a serious sickness. At the expiration of her authorized leave of absence on September 7, 1971, she asked to return to work but was informed that she was laid off for lack of work with the rest of her shift which had been eliminated in toto during the month of August.

Plaintiff initially applied for unemployment compensation benefits on September 8, 1971, requesting benefits from September 7. Her claim was denied by a certifying officer under RSA 282:4 A (1) (Supp. 1972) on the ground that she had voluntarily terminated her employment. In a split decision, the appeal tribunal upheld this decision, and plaintiff appealed to the superior court. The Court (*Grant*, J.), after a hearing, upheld the department's denial of her claim and transferred plaintiff's exceptions to this court.

RSA 282:4 A (1) (Supp. 1972) provides that a claimant is disqualified for benefits for a stated period if "[h]e left his work voluntarily without good cause in accordance with rules and regulations of the commissioner." *Putnam v. Department of Employment Security*, 103 N.H. 495, 175 A.2d 519

(1961). The commissioner's regulation 21 is the applicable regulation and is an integral part of the statute. *Howley v. State,* 107 N.H. 180, 219 A.2d 450 (1966); *Kurowski v. N.H. Dep't of Employment Security,* 107 N.H. 177, 219 A.2d 281 (1966); *Nashua Corp. v. Brown,* 99 N.H. 205, 108 A.2d 52 (1954). It provides in pertinent part as follows: "An individual shall be considered to have left his work voluntarily without good cause if of his own choice or volition he terminates the employee-employer relationship for a reason which is not attributable to the employer." The regulation further provides that an employee who attempts to return to work after an illness which required hospitalization or for which a leave of absence was taken has not voluntarily quit his employment "if the employer is unable to return him to his job or to comparable work due solely to a reduction in force involving such work or other economic conditions . . . ." The regulation defines "leave of absence" as "agreement by the employer to continue the employee-employer relationship or to return the individual to work when he is able to so return to his usual work in accordance with the requirements of the employer."

The evidence was clear that the plaintiff was granted a leave of absence for a definite time by the employer and in accordance with the collective bargaining agreement effective at the time. Even plaintiff's employer, a defendant named in this case, testified on plaintiff's behalf through two of its officials that it at all times had agreed "to continue the employee-employer relationship." That the employment relationship did in fact continue is attested to by the fact that plaintiff retained her seniority status throughout her leave of absence and subsequent layoff; the collective bargaining agreement provided that an employee "shall lose all seniority rights if he . . . quits or terminates his employment." Moreover, plaintiff received holiday pay for Labor Day during her leave of absence and a Christmas bonus during her layoff; her retirement benefits remained in force during both periods; and the company continued during both periods to pay the premiums on her life and medical insurance. None of these benefits would have been available to the plaintiff had she voluntarily quit or been discharged.

Plaintiff unquestionably would have been eligible for benefits had she been laid off directly from work with no intervening leave of absence. *Wellman v. Riley,* 95 N.H. 507, 67 A.2d 428 (1949). On the other hand, plaintiff does not and cannot claim benefits for the time she was on leave of absence. *See id.* The department's claim is that the leave of absence preceding the layoff was a voluntary quit. We believe this claim is contrary to the language and import of RSA 282:4 A (1) (Supp. 1972) and regulation 21. The facts are clear and the defendant employer agreed that the plaintiff never quit or terminated her employment; it was merely suspended for a brief and definite time. "'Leave of absence' connotes continuity of the employment status." (Citations omitted.) *Bowers v. American Bridge Co.,* 43 N.J. Super. 48, 57, 127 A.2d 580, 585 (1956), *aff'd,* 24 N.J. 390, 132 A.2d 28 (1957); *accord, Southwestern Bell Tel. Co. v. Thornbrough,* 232 Ark. 929, 341 S.W.2d 1 (1960); *Goodyear Tire & Rub. Co. v. Employment Security Bd. of Rev.,* 205 Kan. 279, 469 P.2d 263 (1970); *see Michigan Employment Sec. Comm'n v. Vulcan Forging Co.,* 375 Mich. 374, 134 N.W.2d 749 (1965).

This case is unlike *Howley v. State,* 107 N.H. 180, 219 A.2d 450 (1966), where we found that the employment relationship did not continue during the claimant's four month leave of absence which was for an indefinite period of time. "The plaintiff's absence of months might well have extended into years, or he might never have been able to resume work." *Id.* at 182, 219 A.2d at 451. If we were to adopt the theory of the department, a person who had the misfortune to have taken a single day off from work at the particular time a layoff occurred would be deemed to have voluntarily quit his employment. Such is contrary to the language of the statute and regulation and to the underlying purpose of the law "to insure in limited measure against unemployment of individuals regularly attached to the labor market which is not occasioned with their consent or by their fault." *Wellman v. Riley,* 95 N.H. 507, 510, 67 A.2d 428, 429 (1949); *accord, Weiss-Lawrence, Inc. v. Riley,* 100 N.H. 41, 118 A.2d 731 (1955). Plaintiff's unemployment after September 7 was occasioned not by her leave of absence but by her employer's lack of work. We hold that she became involuntarily unemployed

for a reason attributable to her employer at the time she was laid off on September 7, 1971. RSA 282:4 A (1) (Supp. 1972); Department of Employment Security Regulation 21.

This conclusion was implicit in *Kurowski v. N.H. Dep't of Employment Security,* 107 N.H. 177, 219 A.2d 281 (1966). We there held that the claimant who had been expressly denied a pregnancy leave of absence terminated her employment voluntarily when she left her job. The result in that case would have been different had she been granted a leave of absence. We stated: "There is no specific provision in the statute compelling an employer to grant a leave of absence to an employee because of pregnancy." *Id.* at 179, 219 A.2d at 283. In addition to the *Kurowski* case, the decisions from other jurisdictions cited previously support the conclusion we reach today. *See also* Sipser, *Maternity Leave: Judicial and Arbitral Interpretation 1970-72,* 24 Lab. L.J. 173 (1973).

Throughout the proceedings in this case, the emphasis has been upon the issue of whether plaintiff voluntarily quit her employment. Contrary to the appeal tribunal and the superior court, we have found that she did not. The question of her availability for work under RSA 282:3 C arose late in the administrative proceedings and clearly was treated as an ancillary issue of secondary importance at both the administrative and trial court hearings. The evidence in the record tends to support the plaintiff on this point but, since the superior court made no specific findings or rulings, it is impossible for us to tell in whose favor this issue was resolved at trial. Under these circumstances, we think that justice requires that the verdict for the defendant be set aside and the case remanded for a determination of whether plaintiff was available for work pursuant to RSA 282:3 C. RSA 490:14; *see Merchants Nat'l Bank v. Sullivan,* 96 N.H. 430, 78 A.2d 508 (1951); *Grace v. Proctor & Gamble Co.,* 95 N.H. 74, 57 A.2d 619 (1948); *Pregent v. N.H. Dep't of Employment Security,* 361 F. Supp. 782 (D.N.H. 1973) (3-judge court).

*Remanded.*

All concurred.