THE STATE, EX REL. CUTRIGHT, *v.* AKRON CIVIL SERVICE COMMISSION ET AL.
THE STATE, EX REL. MAY, *v.* AKRON CIVIL SERVICE COMMISSION ET AL.

(Nos. 4403 and 4404—Decided November 25, 1953.)

*Mr. Paul C. Laybourne,* for relator in each case.
*Mr. Roy E. Browne,* director of law, *Mr. Nathan*

*Koplin* and *Mr. Theodore R. Price,* for respondents Civil Service Commission, Harlan Schwab, Fleet Perrine, Fred Renkert, and Russell M. Bird, Mayor.

*Mr. Hollis Allen,* for respondent Boyd Burk.

DOYLE, P. J.  Two petitions, each seeking a writ of mandamus, were filed originally in this court.  In view of the fact that the questions involved in each case are in all essential respects the same, the cases have been consolidated for trial.

In each case the relator is a police officer in the city of Akron (Carroll Cutright in one and George May in the other) ; the defendants are the Akron Civil Service Commission and the members thereof; the mayor, who was also ex officio safety director of the city; and a fellow police officer named Boyd Burk.

The amended petitions state, and the claims in trial are, in substance that:

(1) The Civil Service Commission of the city, on May 8, 1953, conducted an examination to create an eligible list for the appointment of police captains, two vacancies then existing.

(2) Five of those who submitted themselves for examination passed the 75 per cent minimum grade and were placed on the eligible list in the order of their grades—*i. e.,* Lieutenant Harry Whidden (87.65 per cent), Lieutenant Boyd Burk (defendant, 83.95 per cent), Lieutenant Carroll Cutright (relator, 83.45 per cent), Lieutenant George May (relator, 80.00 per cent) and Lieutenant William Willoughby (79.50 per cent).

(3) Lieutenant Burk was not legally entitled to take the examination, because he was absent from the department for a continuous period of more than two years, was never legally reinstated, and was, at the time he took the examination, "illegally holding the position of lieutenant in said department."

(4) The merit rating, which constituted 20 per cent of the entire grade, was not fairly employed, because, whereas for all officers except Lieutenant Burk, the merit grades given in the years 1952 and 1953 were used, in Burk's case his merit rating in the years 1950 and 1953 were taken, and the standard of rating for all members of the department was substantially higher in the year 1950 than in the years 1952 and 1953. (Burk's 1950 rating was taken because in the years 1952 and 1953 he was absent while in the service of the Federal Bureau of Investigation.)

(5) Credit for continuous service was wrongfully given to Lieutenant Burk, which, under the classification of seniority, gave a higher final grade than he would have had if he had not been given credit for "two years and four days" during which he was absent from the department.

(6) "* * * the action of the Civil Service Commission in permitting an unqualified person to take the promotional examination, and as a result of unfair credit given others taking the examination, for length of service and merit rating, and as. a result of the commission failing to give examinations in accordance with the laws of Ohio, he (the relator in each case) was deprived of his proper standing upon an eligible list * * *; that the said Boyd Burk was certified ahead of him and was appointed to the position of captain of police in the Akron City Police Department * * *, and that said Boyd Burk is now holding said position illegally * * *."

In addition to again pleading unlawful conduct on the part of the defendants, and that "Boyd Burk is occupying said position without authority of law and contrary to law," each plaintiff "prays for an order vacating the eligible list certified by the Civil Service Commission of the city of Akron, Ohio; vacating the appointment of said Boyd Burk as captain in the Ak-

ron Police Department, and for an order requiring the Civil Service Commission to make up and certify an eligible list for captain excepting the so-called performance and service records which had previously been considered by the commission as part of the examination, or make up said list and make the appointment therefrom on the basis of the previous examination, eliminating the credits given under the so-called performance records section of the previous examination.''

Essential facts now before us to which we must apply the law are in substance as follows:

Lieutenant Boyd Burk, of the Akron Police Department, was assigned by the chief of police of Akron to temporary duty with the Federal Bureau of Investigation on October 16, 1950, pursuant to request by the federal agency for assistance in its investigation of subversive activities. The police officer was, as of that date, given a leave of absence by the Civil Service Commission; was removed from the city payroll, and received pay for his services from the federal government. He continued in federal service until his resignation therefrom effective October 17, 1952, and returned to active duty in the Akron Police Department effective October 20, 1952. By local official action he was reinstated to the police department payroll as of October 20.

In determining the question of whether the officer's absence from the Akron Police Department, for a period of more than two years, entitled him to reinstatement and with time or seniority credit for the time of his absence, we must now turn to the law.

Section 486-16, General Code, in part provided:

''Any person holding an office or position under the classified service who has been separated from the service without delinquency or misconduct on his part may, with the consent of the commission, be reinstated

within one year from the date of such separation to a vacancy in the same or similar office or position in the same department.''

As we interpret this section of the Code, it does not apply to a police officer in the classified service who has been given a leave of absence. It applies rather to one who has resigned or who has otherwise been *separated* from the service. See, for instance, the comment on its application in *State, ex rel. Simmons,* v. *Wieber et al., Bd. of Trustees,* 145 Ohio St., 121, at p. 126, 60 N. E. (2d), 687.

A leave of absence from the service is not a separation from the service. Apart from any extrinsic consideration, the natural meaning of the phrase ''leave of absence'' is not that the one on leave is no longer a member of the police department, or, in other words, is separated from the department, but rather that such one, while still a member of the department, is temporarily excused from performing his active duties as a policeman in the department, during which time remuneration is suspended. As indicative of legislative thinking in the Code section cited above, the Legislature, in enacting Section 486-16*b*, General Code, specifically referred to a resignation. This section in part provided: ''Any person holding an office or position under the classified service in a fire department or a police department, who *resigns* therefrom, may be reinstated to the rank of fireman or policeman, as the case may be, upon the filing of a written application for reinstatement * * *, said application for reinstatement shall be filed within one year from the date of resignation.'' (Emphasis ours.)

It is argued that Rule XXIII of the Akron Civil Service Commission, which authorized the granting of leave of absence for work in the Federal Bureau of Investigation, is in conflict with general laws, and, as a result thereof, cannot control the officer's reinstatement to active duty and to seniority privileges.

Rule XXIII is as follows:

"Section 1. Leave of Absence Without Pay: With the consent of the Civil Service Commission, an appointing officer may grant a leave of absence to an employee for a definite period of not to exceed one year, unless such leave is granted for military duty or service with the Federal Bureau of Investigation. A leave of absence granted for military duty or Federal Bureau of Investigation service, shall be granted for the duration of such service. 'Leaves of absence may be granted for good cause among which the following shall be deemed proper: Military Service; service with the Federal Bureau of Investigation; physical disability; study or training of value in connection with the municipal service. All leaves of absence shall be promptly referred to the Commission for approval or disapproval, as the case may be, in order that the civil service status of such absentee may be protected.' "

This amendment of the civil service rules became effective on October 13, 1950. As noted above, Lieutenant Burk discontinued active duty with the police department on October 16, 1950. It thus appears that, if the rule is effective and enacted within the power of the municipal commission, it governs the right of Lieutenant Burk to reinstatement to active duty at the conclusion of his services with the Federal Bureau of Investigation, even though he was absent from active duty with the Akron Police Department for a period of over two years.

In an examination of the many statutes cited, and in fact of the entire field of legislation bearing upon the question involved, we find no general laws of the state which are in conflict with the rule under investigation. If Section 486-16, General Code, *supra*, may be said to be a "general law," we have heretofore determined that it applies only to one who is "separat-

ed'' from the service and not one who is on leave of absence. It seems obvious to this court that Rule XXIII controlled the status of Lieutenant Burk when he was reinstated to active duty, and, in so holding, we are giving, as we must, full force and effect to the powers granted municipalities by Article XVIII, Section 3, of the state Constitution. The powers granted are:

''Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws.''

See: *State, ex rel. Lentz et al., Civil Service Commission,* v. *Edwards,* 90 Ohio St., 305, 107 N. E., 768; *State, ex rel. Arey,* v. *Sherrill, City Mgr.,* 142 Ohio St., 574, 53 N. E. (2d), 501; *Harsney* v. *Allen, Jr., Chief of Police,* 160 Ohio St., 36, 113 N. E. (2d), 86.

Before terminating this phase of our analysis, reference should be made to the petitioners' claim that Section 486-7a, General Code, must be considered as controlling the instant case. They quote as follows from the section:

''The words, 'continuously employed,' for the purpose of this adjustment, shall mean employment with the state of Ohio with no break in pay except for:

''(a) leave of absence with subsequent reinstatement within one year;

''* * *

''(d) military service leave as authorized by Ohio statutes.''

It is claimed that, in this section of the Code, no provision was made for service in the Federal Bureau of Investigation. It is true, as claimed, that no specific provision in this legislation was made for service in the federal bureau, but the section of the Code had no application to police officers of a municipality. In

fact, it applied only to persons occupying positions in the state government, as distinguished from the municipal government.

In view of our conclusions on the status of Lieutenant Burk when he was reinstated to active duty, it logically follows that he was entitled to take a promotional examination from his legally-held position as lieutenant of police, and further that he was entitled to a seniority rating which would include the time spent with the Federal Bureau of Investigation, as the latter detached work did not interrupt his membership in the police department, nor his "years of service" as that term may be determined to mean within the purview of Section 486-10, General Code.

2. In considering the claim that "the merit rating * * * was not fairly employed," we do not find the argument tenable.

The rule of the Akron Civil Service Commission (Rule VII, Section 2, paragraph h), which cannot be successfully challenged, provides:

"Efficiency. This subject shall be used in promotional examinations only and shall consist of the average of the two previous efficiency ratings of the employee concerned or of his last rating in case he has not been in service long enough to receive two."

The facts are that the "two previous efficiency ratings" of Lieutenant Burk were actually taken, and, even though they were not in consecutive years, the ratings which were taken were those which the rule required.

3. In the light of our analysis of the facts before us, we conclude that the petitioners have neither proved a clear legal right to the relief sought, nor that there has been a plain dereliction of duty established against the municipal officials. The writs will be denied for the reasons stated above.

4. While we have preferred to base our conclusions

on the grounds and for the reasons heretofore stated, we observe in passing that a case against the granting of the writs might be persuasively argued on the authority of *Kluth* v. *Andrus, Dir. of Public Safety,* 157 Ohio St., 279, 105 N. E. (2d), 579, the first paragraph of the syllabus of which is as follows:

''1. Where the promotional civil service examination given for a position did not fully comply with the civil service laws and where the members of the civil service commission fraudulently raised the grade of the candidate whom it certified and lowered the grade of another candidate, so as to make it appear that the candidate certified to the appointing authority as having attained the highest rating did receive the highest grade, but it does not appear that the candidate so certified either sponsored, participated in or had anything to do with such illegal and improper actions, and where such candidate was thereafter appointed to that position, pursuant to Section 486-13, General Code, and rendered satisfactory service in that position for more than three months, his removal from that position is thereafter governed by the provisions of Section 486-17a, General Code.''

The writs will be denied.

*Writs denied.*

STEVENS, J., and HUNSICKER, J., concur.