[Civ. No. 1630. Fifth Dist. May 14, 1973.]

HECTOR G. PERALES, Plaintiff and Appellant, v.
DEPARTMENT OF HUMAN RESOURCES DEVELOPMENT et al.,
Defendants and Respondents.

COUNSEL

Gene Livingston and Jonathan B. Steiner for Plaintiff and Appellant.

Levy & Van Bourg, Abe F. Levy and Jack Levine as Amici Curiae on behalf of Plaintiff and Appellant.

Evelle J. Younger, Attorney General, Edmund E. White, Melvin R. Segal and N. Eugene Hill, Deputy Attorneys General, and Gary Stetzel for Defendants and Respondents.

Gibson, Dunn & Crutcher, Willard Z. Carr, Jr., and Richard Chernick as Amici Curiae on behalf of Defendants and Respondents.

OPINION

**FRANSON, J.**—Appellant petitioned the superior court for a writ of mandate, pursuant to Code of Civil Procedure section 1094.5, directing respondents to grant his claim for unemployment insurance benefits. He appeals from a judgment denying the writ.

During the 1969 canning season appellant was employed by Hunt

Wesson Foods, Inc., where he earned sufficient wages to qualify for unemployment insurance benefits. After the canning season ended he went to work pruning peach trees for a farmer near Waterford, California. Appellant pruned trees for about nine days; he was paid 75 cents a tree and earned from $20 to $35 per day. On January 7, 1970, he quit his pruning job to attend English classes although there were three days of pruning work left.[1]

While attending school, appellant filed a claim for unemployment compensation benefits. His claim was denied by the Department of Human Resources Development on the ground, among others, that he had left his last work voluntarily and without good cause.[2] Appellant appealed to a referee, who affirmed the department's decision, and then appealed to the Unemployment Insurance Appeals Board, which affirmed the referee's decision. He sought mandamus in the superior court; after independently reviewing the administrative record the court concluded that the weight of the evidence supported the appeals board decision.

Appellant contends that he left his last employment, pruning peach trees, with good cause within the meaning of Unemployment Insurance Code[3] section 1256 in that he quit to attend school so that he could improve his chances for future employment. He also contends that the department's denial of unemployment compensation benefits violates the provisions of section 1256 because the statutory presumption that an individual has not voluntarily left his work without good cause may be *rebutted only* by the employer giving written notice to the director within five days after termination of service, setting forth facts sufficient to overcome the presumption. We hold both contentions to be without merit.

Section 100 defines the policy of the unemployment insurance law, in part, as follows: ". . . for a system of unemployment insurance providing benefits for persons *unemployed through no fault of their own,* and to reduce *involuntary unemployment* . . . to a minimum." (Italics added.)

---

[1]Prior to January 1970 appellant had applied to attend English classes offered to Spanish-speaking workers. He desired to improve his ability to read, write and speak English, hoping that he would be able to advance himself to a foreman's position at the cannery and obtain year-round employment. The classes were on a daily basis (presumably five days a week) from 9 a.m. to 3:30 p.m., and began on January 8, 1970 and continued to about April 29, 1970.

[2]Unemployment Insurance Code section 1256 provides, in part: "An individual is disqualified for unemployment compensation benefits if the director finds that he left his most recent work voluntarily without good cause or that he has been discharged for misconduct connected with his most recent work."

[3]All future references to code sections are to the Unemployment Insurance Code unless otherwise indicated.

■ The basic purpose of the law is to insure a diligent worker against the vicissitudes of enforced unemployment not voluntarily created without good cause. (Unemp. Ins. Code, §§ 100, 1256; *Cal. Portland Cement Co.* v. *Cal. Unemp. Ins. Appeals Board,* 178 Cal.App.2d 263, 269-270 [3 Cal. Rptr. 37].)

■ Whether an employee has quit his employment without good cause is a question of law. (*Cal. Portland Cement Co.* v. *Cal. Unemp. Ins. Appeals Board, supra,* at p. 274.) Normally, "good cause" has some relationship to the job. For example, in *Bunny's Waffle Shop* v. *Cal. Emp. Com.,* 24 Cal.2d 735 [151 P.2d 224], it was held that the employee had good cause to quit because the employer cut the employee's wages by 25 percent.

Under compelling circumstances quitting for personal reasons unrelated to the employment may also bring one within the ambit of good cause. In *Cal. Portland Cement Co.* v. *Cal. Unemp. Ins. Appeals Board, supra,* 178 Cal.App.2d 263, it was held that leaving a job to take another job was *not* without good cause within the meaning of Unemployment Insurance Code section 1032 which provides that an employer's unemployment insurance account is not to be charged if the claimant left his employ "voluntarily and without good cause," even though the employer introduced evidence which supported an inference that it was not responsible for the employee's quitting. The reviewing court, in upholding the administrative decision, noted that the employer had not met its burden of proving that the employee did not have a compelling reason for quitting. The court stated that the Legislature intended that good cause for leaving a job may include causes personal to the claimant, citing section 1264. (*Cal. Portland Cement Co.* v. *Cal. Unemp. Ins. Appeals Board,* at p. 272.)

Section 1264 provides that an employee who quits his or her employment to be married or to accompany his or her spouse to a place from which it is impractical to commute to such employment, or whose marital or domestic duties cause a spouse to resign from his or her employment, shall not be eligible for unemployment insurance benefits for the duration of the ensuing period of unemployment unless the employee at the time of leaving and at the time of filing his claim for benefits "is the sole or major support of his or her family." By this statute the Legislature in effect has declared that quitting a job for the personal reasons therein enumerated may constitute good cause unless the income from the job is secondary or incidental to the support of the family. Where the employee who quits to get married or to join a spouse or to perform a necessary marital or domestic duty is the

sole or major support of his or her family, the quitting is apparently deemed by the Legislature to be so necessitous as to be in fact "involuntary."

■ Turning to the facts of the case at bench, we cannot say that quitting a job to attend school, no matter how personally commendable the step may be, is an imperative and compelling reason of such magnitude as to render the claimant eligible for unemployment benefits, at least in the absence of explicit legislative authority. If this were good cause within the meaning of section 1256, untold numbers of persons could quit their jobs to attend school while receiving unemployment compensation benefits. However great may be society's interest in furthering a workingman's education, we find nothing in the unemployment insurance law to sanction this objective. Although we must afford a liberal construction to this statute so as to effect all the relief that the Legislature intended to grant (*Cal. Emp. Com.* v. *Butte County etc. Assn.,* 25 Cal.2d 624, 630 [154 P.2d 892]) we cannot exceed the limits of the statutory intent. (*California Emp. Com.* v. *Kovacevich,* 27 Cal.2d 546, 549-550 [165 P.2d 917].) The unemployment insurance system cannot be used to subsidize an employee's education.

We conclude that appellant quit his pruning job without good cause.

■ We turn now to the question of the legal effect of the presumption created by section 1256. Section 1256 provides, in part: "An individual is presumed to have been discharged for reasons other than misconduct in connection with his work and not to have voluntarily left his work without good cause unless his employer has given written notice to the contrary to the director within five days after the termination of service, setting forth facts sufficient to overcome the presumption. If the employer files such notice, the question shall immediately be determined in the same manner as benefit claims."

Appellant contends that the statute provides the sole method for rebutting the presumption and unless that method is followed the presumption is determinative of the question of discharge or quitting for good cause. He asserts that whether an employee voluntarily quits without good cause or is discharged for misconduct is not an issue to be determined by the department unless the employer has, within five days after the termination of the employment, filed written notice alleging facts that the employee either quit voluntarily without good cause or was discharged for misconduct.

What appellant indeed is saying is that the section 1256 presumption is conclusive unless the employer files the prescribed notice within five days.

It is persuasive that the statute itself does not declare the presumption conclusive. Evidence Code section 620 provides: "The presumptions established by this article, and all other presumptions *declared by law to be conclusive,* are conclusive presumptions." (Italics added.)[4]

Evidence Code section 601 provides in substance that all presumptions that are not conclusive are rebuttable.

A conclusive presumption is actually a substantive rather than an evidentiary rule of law. (*Kusior* v. *Silver,* 54 Cal.2d 603, 619 [7 Cal.Rptr. 129, 354 P.2d 657].) We cannot arbitrarily declare a rule of substantive law unsupported by sound policy or reason. Examining section 1256, we find no overriding public interest to be served by indisputably presuming from the failure of an employer to file the five-day pre-claim notice of termination that the claimant did not quit his job without good cause or was discharged for reasons other than misconduct. To the contrary, it is the policy of the state to provide benefits only to those who did not quit without good cause or were discharged for reasons other than misconduct connected with the job. (Unemp. Ins. Code, § 1256.) To hold the presumption conclusive would contravene the clear policy of the act.

We must construe section 1256 in the context of sections 1327 and 1328.[5] These sections provide as follows:

Section 1327: "A notice of the filing of a new or additional claim shall be given to the employing unit by which the claimant was last employed immediately preceding the filing of such claim, and the employing unit so notified shall submit within 10 days after the mailing of such notice any facts then known which may affect the claimant's eligibility for benefits."

Section 1328: "The facts submitted by an employer pursuant to Section 1327 *shall be considered* and a determination made as to the claimant's eligibility for benefits. The claimant and any employer who prior to the determination has submitted any facts or given any notice pursuant to Section 1327 and authorized regulations shall be promptly notified of the determination and the reasons therefor and may appeal therefrom to a referee within 10 days from mailing or personal service of notice of

---

[4]The Evidence Code states only four such conclusive presumptions (Evid. Code, §§ 621-624), none of which apply here.

[5]The present language of sections 1327 and 1328 was first enacted by Statutes 1951, chapter 1694, page 3901; the basic concept of these statutes was first enacted by Statutes 1947, chapter 1436, page 3003.

It should be noted that the section 1256 presumption was added by Statutes 1939, chapter 674, page 2151, § 14.

the determination. The 10-day period may be extended for good cause. The director shall be an interested party to all appeals." (Italics added.)

Whatever the Legislature's intent or purpose might have been at the time of the enactment of section 1256, when sections 1327 and 1328 were subsequently enacted the Legislature obviously intended the section 1256 presumption to be a rebuttable one. These later sections mandate that the claimant's last employing unit be notified of the filing of a claim for benefits and the employing unit so notified shall submit *within 10 days of such notice* (§ 1327) any facts bearing upon the claimant's eligibility, and the facts so submitted *shall be considered in the determination of the claimant's eligibility for benefits* (§ 1328). Section 1328 manifestly contemplates that the determination of eligibility is to be made on the merits of the claimant's application rather than on the basis of an employer's failure to file the five-day notice under section 1256.[6]

Under accepted principles of statutory interpretation we must construe section 1256, if reasonably possible, in a manner consistent with sections 1327 and 1328. (*Bilyeu* v. *State Employees' Retirement System,* 58 Cal.2d 618, 627-628 [24 Cal.Rptr. 562, 375 P.2d 442]; see *Warner* v. *Kenney,* 27 Cal.2d 627, 629 [165 P.2d 889].) We can do this by construing the 1256 presumption as rebuttable. To hold otherwise would be to nullify the administrative procedures for determining a claimant's eligibility as established by sections 1327 and 1328.

We further note that respondents and all other agencies charged with enforcement of the Unemployment Insurance Code for many years consistently have construed the section 1256 presumption to be a rebuttable one.[7] Unless clearly erroneous the administrative interpretation of

---

[6]The California unemployment insurance program was intended to comply with federal standards. (See § 101.) The United States Secretary of Labor is authorized to certify payment of federal funds to the individual states provided the state has an unemployment compensation law approved by the secretary. (42 U.S.C. § 502.) The secretary is not authorized to certify payment of funds to a state unless he finds that the law of such state includes provision for administrative procedures "reasonably calculated to insure full payment of unemployment compensation when due. . . ." (42 U.S.C. § 503(a)(1).) Section 503 also contemplates determination of claims on their merits. (See *California Human Resources Dept.* v. *Java,* 402 U.S. 121 [28 L.Ed.2d 666, 91 S.Ct. 1347].)

[7]Affidavits of Thomas Hannah, Chief of the Benefits Section of the Department of Human Resources Development, included as part of amici curiae briefs on behalf of respondents show that pursuant to sections 1327 and 1328 an employer may properly present facts bearing upon a claimant's eligibility even though no section 1256 pre-claim notice was filed. For the year 1970, for example, only 632 pre-claim notices were filed in the entire state. About 1,180,483 valid claims were filed in that same period. Of those claimants 173,116 were disqualified for having voluntarily

a statute by those charged with its enforcement is entitled to great weight. (*Cannon* v. *Industrial Acc. Comm.,* 53 Cal.2d 17, 22 [346 P.2d 1].)

To hold that an employer's failure to file a section 1256 pre-claim notice renders the department powerless to deny benefits where the claimant's ineligibility appears from his own statements or from facts which the department establishes by their own investigation, would be contrary to the department's clear duty to administer the law according to its basic purpose as declared by the Legislature.[8]

For the reasons stated, we hold that section 1256 establishes a rebuttable rather than a conclusive presumption, and that the presumption may be rebutted by facts disclosed by the claimant in his application or in other documents signed by him when applying for benefits, or disclosed by him during interviews with department personnel, or disclosed after independent investigation by the department, or by the employer pursuant to sections 1327 and 1328.

Because the presumption is established to implement the public policy of prompt payment of benefits to the unemployed so as to reduce the suffering caused thereby (§ 100), we conclude that the presumption affects the burden of proof.[9] (Evid. Code, § 605.) It imposes upon the parties against whom it operates, the employer and the department, the burden of proving the nonexistence of the presumed fact (Evid. Code, § 606). This means that to overcome the presumption the employer or

quit without good cause or were discharged by reason of misconduct in connection with their work. Approximately 72 of those 173,116 claimants had pre-claim notices filed against them by their last employers; thus the department found approximately 170,000 other claimants were ineligible for benefits by virtue of evidence other than disclosed by a section 1256 pre-claim notice.

[8]The case at bench provides a clear example of the manner in which unwarranted payments would result if the section 1256 presumption was conclusive. Hunts, appellant's last employer who was subject to the unemployment insurance provisions, could not properly file a section 1256 five-day notice because appellant was involuntarily laid off from his job at the cannery. The unidentified farmer, appellant's last employer, is not subject to the unemployment insurance law and had no reason to file a notice.

We can also imagine an atypical situation where a claimant himself states that he was discharged for misconduct, e.g., that he had embezzled funds of his employer, or that he had become unemployed voluntarily without good cause simply because he preferred receiving unemployment benefits to working; would anyone suggest that the department would be powerless to find the claimant disqualified? (See 37 Ops.Cal.Atty.Gen. 18.)

[9]Section 1256 requires the employer's notice to set forth "facts sufficient to overcome the presumption." This language indicates that the Legislature intended the presumption to effect the burden of proof.

the department must prove *by a preponderance of the evidence* that the claimant quit without probable cause or was discharged for misconduct in connection with his work. (Evid. Code, § 115; Assembly Committee on Judiciary comment to West's Evid. Code Ann., § 606.) In the case at bench the department met the burden of proof; the trial court's findings are supported by substantial evidence.

Finally, appellant complains of the trial court's failure to make a finding as to whether appellant's last employer filed a written notice as required by section 1256. Appellant alleged in his petition that the required notice was not given, and respondent did not deny this allegation. Material allegations of the complaint which are not controverted are taken as true (Code Civ. Proc., § 431.20, subd. (a)) and as facts admitted are not issues in the case, a finding regarding the employer's notice was not required. (*Johnston* v. *Security Ins. Co.,* 6 Cal.App.3d 839, 844 [86 Cal. Rptr. 133].)

The judgment is affirmed.

Brown (G. A.), P. J., and Gargano, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 25, 1973.