[Civ. No. 44489. Second Dist., Div. Two. Apr. 23, 1975.]

HECTOR ZORRERO, Plaintiff and Appellant, v.
UNEMPLOYMENT INSURANCE APPEALS
BOARD, Defendant and Respondent;
ALPHA BETA ACME MARKETS, INC.,
Real Party in Interest and Respondent.

**COUNSEL**

Jonathan B. Steiner, Charles E. Jones, Eugene Topel and Richard A. Paez for Plaintiff and Appellant.

Evelle J. Younger, Attorney General, Elizabeth Palmer and Willard A. Shank, Assistant Attorneys General, Edward M. Belasco, Deputy Attorney General, for Defendant and Respondent.

No appearance for Real Party in Interest and Respondent.

**OPINION**

**COMPTON, J.**—The California Unemployment Insurance Appeals Board (board) determined that Hector Zorrero (claimant) was ineligible

for unemployment insurance benefits. Claimant petitioned the Superior Court of Los Angeles County for a writ of mandate to compel the board to set aside that determination.

Unemployment Insurance Code section 1256 provides that an individual is not qualified for unemployment compensation benefits if it is found that he left his work voluntarily without good cause. That same statute, however, provides that an individual is presumed not to have voluntarily left his work without good cause unless his employer gives written notice to the Director of the Department of Human Resources Development within five days after termination of employment setting forth facts to overcome that presumption.

Claimant left his employment on January 22, 1971, and applied for compensation. His employer did not inform the department that he had left his employment without good cause until March 10, 1971. Initially the superior court in this matter granted claimant's petition for writ of mandate holding that the employer's failure to file its notice within the prescribed time raised a conclusive presumption that claimant's leaving his employment was for good cause. On appeal to this court in consolidated cases entitled *Miranda* v. *Department of Human Resources Dev.,* 33 Cal.App.3d 314 [109 Cal.Rptr. 35], it was held that that presumption was merely rebuttable and the matter was returned to the superior court for a new trial.

At the second trial the superior court reweighed the evidence contained in the administrative record, filed written findings of fact and concluded that claimant's voluntary termination of employment was without good cause. Claimant's petition for writ of mandate was denied and he has appealed.

Relying on *Perales* v. *Department of Human Resources Dev.,* 32 Cal.App.3d 332 [108 Cal.Rptr. 167], and *Miranda, supra,* claimant contends that the board and the real party in interest, the employer, by force of the presumption had the burden of proving by a preponderance of the evidence that the claimant left his employment without "good cause," and that there was a failure to carry that burden.

Claimant admits that the evidence which was offered at the administrative hearing and upon which the trial court based its judgment was undisputed. The uncontroverted evidence shows that the claimant voluntarily terminated his employment. The reason which he advanced

for so doing is equally undisputed. Thus the question presented to both the superior court and to this court is essentially a question of law in interpreting the legislative meaning in the phrase, "good cause," (*Cal. Portland Cement Co.* v. *Cal. Unemp. Ins. Appeals Board,* 178 Cal.App.2d 263 [3 Cal.Rptr. 37]) or more precisely, whether the interpretation of that meaning by the administrative agency charged with the responsibility of administering this particular program is legally supportable. (*Pacific Motor Transport Co.* v. *State Bd. of Equalization,* 28 Cal.App.3d 230 [104 Cal.Rptr. 558]; *Ralphs Grocery Co.* v. *Reimel,* 69 Cal.2d 172 [70 Cal.Rptr. 407, 444 P.2d 79].)

█ The effect of the rebuttable presumption created by section 1256 of the Unemployment Insurance Code is to permit the department to make prompt payment of benefits (Unempl. Ins. Code, § 1326) without the necessity of investigating the merits of each claim and essentially places the burden on the employer to challenge the claimant's eligibility. The presumption, however, may be rebutted by facts disclosed by the claimant himself. (*Perales, supra.*)

█ When the facts are established, as here, the presumption loses its force and does not carry forward to require the department or the reviewing court to presume that those facts as a matter of law constitute "good cause."

The facts are that claimant, a resident of East Los Angeles, was employed for five years as a yard man by the Alpha Beta Acme Market in its crate yard at 777 Harbor Boulevard, La Habra. The distance between claimant's home and his employment was 43 miles round trip. For all but the last three months of his employment the claimant drove to and from his work in a 1960 pickup truck. This truck broke down and required substantial repairs. Claimant determined that the repairs would be too costly and the vehicle was too old to warrant such an expenditure. For three months prior to his termination from his employment the claimant rode to and from work on a bus, a trip which took him two hours each way. Claimant concluded that this traveling was too onerous so he quit his job.

Claimant did not feel like buying a small economy type of automobile, although he had a few hundred dollars at the time he quit his job. Claimant knew that Alpha Beta had a number of stores throughout the whole area, yet he never asked his employer to be transferred to a store nearer his home.

Claimant was earning $2.715 an hour at the end of his employment and had a $206.31 vacation pay credit. The employer could have placed

claimant on a job in one of its stores as a custodian, which paid a higher rate of pay, yet claimant testified at the administrative hearing that he was not interested in such employment.

The term "good cause" is not susceptible of precise definition. In fact, its definition varies with the context in which it is used. Very broadly, it means a legally sufficient ground or reason for a certain action.

■ "In general 'good cause,' as used in an unemployment compensation statute, means such a cause as justifies an employee's voluntarily leaving the ranks of the employed and joining the ranks of the unemployed; the quitting must be for such a cause as would reasonably motivate in a similar situation the average able-bodied and qualified worker to give up his or her employment with its certain wage rewards in order to enter the ranks of the compensated unemployed." (81 C.J.S. Social Security And Public Welfare, § 167, p. 253.)

" 'Good cause' cannot be determined in the abstract any more than can any other legal conclusion. It can be determined only in relation to a set of facts." (*Cal. Portland Cement Co.* v. *Cal. Unemp. Ins. Appeals Board, supra,* 178 Cal.App.2d 263, at p. 274.) It has been held that the Legislature intended by the phrase "good cause" to include some causes which are personal and that it need not necessarily arise out of or be attributable to the employment itself. *(Cal. Portland Cement Co., supra.)*

■ On the other hand the Unemployment Compensation Act is fundamentally designed to act as a buffer or hedge against the ravages of sudden and unexpected loss of one's livelihood. As the Legislature's declaration of policy states, the system of unemployment insurance is to provide "benefits for persons unemployed through no fault of their own, and to reduce involuntary unemployment and the suffering caused thereby to a minimum. [¶] It is the intent of the Legislature that unemployed persons claiming unemployment insurance benefits shall be required to make all reasonable effort to secure employment on their own behalf." (Unemp. Ins. Code, § 100.)

Thus the determination of what constitutes "good cause" for voluntarily quitting one's job must be undertaken with the public policy in mind. That policy, as we see it, requires that voluntary termination of employment be based on serious and exigent circumstances.

■ The case at bar is not a situation in which the employer moved the location of its operation thereby creating a transportation problem

for the claimant. Claimant, while admitting the availability of public transportation, simply says that it is unreasonable to spend four hours a day in transit to and from work.

Transportation to and from work is basically the personal responsibility of the employee unless special circumstances require the employer to furnish transportation. Cases from other jurisdictions so hold. Even in situations where the employer has moved his place of operation so as to increase the transportation problem for the employee it is held that the employee is not justified in terminating his employment for that reason. (*Szojka* v. *Unemployment Compensation Bd. of Review,* 187 Pa.Super 643 [146 A.2d 81] (Where the distance was 32 miles one way and public transportation took less than two hours); *Faulkiner* v. *Unemployment Comp. Bd. of Review,* 200 Pa. Super 398 [188 A.2d 803] (the distance was 32 miles); *Mississippi Employment Security Com'n.* v. *Ballard,* 252 Miss. 418 [174 So.2d 367].)

Given the geographical configuration of the Los Angeles area it is not unusual for persons to live in excess of 20 miles from their employment and while the public transportation system in this area may not be what many would like it to be, the fact is that vast numbers of workers in this area are forced to commute by public transportation on trips which run between an hour and two hours in each direction.

Furthermore, while transportation by private automobile may be more comfortable than public transportation, it is not uncommon in Southern California for persons to spend an hour and a half to two hours in driving over congested streets and freeways to reach their places of employment.

Claimant's disinclination to acquire another vehicle and his disinterest in other types of employment suggest that his voluntary termination of employment was not the result of necessary and compelling reasons. A two-hour bus ride to work may be distasteful but it is no excuse for quitting one's job.

The judgment is affirmed.

Roth, P. J., and Beach, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 3, 1975.