[Civ. No. 36823. First Dist., Div. Four. Mar. 30, 1976.]

DEBBE LEWIS, Plaintiff and Appellant, v.
UNEMPLOYMENT INSURANCE APPEALS BOARD,
Defendant and Respondent.

**COUNSEL**

A. Keith Lesar, Richard M. Pearl and Diane S. Greenberg for Plaintiff and Appellant.

Evelle J. Younger, Attorney General, and Eleanor Nisperos, Deputy Attorney General, for Defendant and Respondent.

**OPINION**

**RATTIGAN, Acting P. J.**—Appellant Debbe Lewis commenced this proceeding in administrative mandamus by petitioning the superior court pursuant to Code of Civil Procedure section 1094.5. (We hereinafter refer to her as "petitioner.") In her petition, she sought a writ of mandate which would have required the Unemployment Insurance Appeals Board (respondent below and here, to which we refer as "respondent Board," or the "Board") to set aside its decision denying her application for unemployment compensation benefits and to declare her eligible therefor. The trial court made findings of fact, drew conclusions of law adverse to petitioner, and entered a judgment denying her the relief sought. She appeals from the judgment.

Prior to July 1973, petitioner was regularly employed in Santa Cruz by Charmwick, Inc., a candle manufacturer. She took a "leave of absence" in that month and found herself unemployed when she returned from the "leave" two months later: the circumstances are hereinafter described as expressly found by the trial court.

Petitioner thereupon applied to the Department of Human Resources Development[1] for the benefits in question. The director determined that

---

[1]The department was subsequently renamed the "Department of Employment Development" (§ 133, as amended in 1973 [Stats. 1973, ch. 1207 (p. 2651), § 42 (p. 2667)] and, additionally, the "Employment Development Department." (§ 133, as amended in

she was ineligible upon the ground that she had "left . . . [her] . . . most recent work voluntarily without good cause," as provided in section 1256 of the Unemployment Insurance Code.[2]

Petitioner appealed to a Board referee pursuant to section 1328. After a hearing, the referee filed a written decision denying her application upon the same ground. Upon her further appeal to respondent Board as permitted by section 1336, the Board entered a decision in which it adopted the referee's statement of facts, and his reasons, and affirmed his decision.

Having thus exhausted her administrative remedy, petitioner commenced the present proceeding. The issues therein were framed upon her petition and the Board's answer and return. The return included the department's "Administrative Record" of the aforementioned administrative proceedings. This record was the sole evidentiary basis of the trial court's findings and conclusions.

The facts appear in the findings, all of which are supported by the evidence. Petitioner expressly accepts the findings without dispute; as will appear, she challenges some of the trial court's conclusions of law. We therefore quote the findings and conclusions, in the context of the prefatory language employed by the trial court, as follows (all italics added):

- "The matter was submitted to the court for decision, and the court being fully advised in the premises and having exercised its independent judgment on the evidence now makes the following [¶] FINDINGS OF FACT[:]

1974 [Stats. 1974, ch. 503, § 1 (p. 1177)].) We hereinafter refer to it as the "department" and, on occasion, to its "director." (See § 134.)

[2]Except where otherwise expressly indicated, all statutory references herein are to the Unemployment Insurance Code. Section 1256 provides, in successive paragraphs as indicated and in pertinent part (italics added):

"1256. An individual is disqualified for unemployment compensation benefits if the director finds that he *left his most recent work voluntarily without good cause* or that he has been discharged for misconduct connected with his most recent work.

"An individual is *presumed* to have been discharged for reasons other than misconduct in connection with his work and *not to have voluntarily left his work without good cause* unless his employer has given written notice to the contrary to the director within five days after the termination of service, setting forth facts sufficient to overcome the presumption. . . ."

"I. Petitioner was employed as a candle decorator in special designs by Real Party In Interest, Charmwick, Inc., for approximately four and one half months prior to July 20, 1973.

"II. Prior to July 20, 1973, petitioner requested a leave of absence, beginning after she finished work on July 20 and lasting until mid-September. Petitioner requested the leave for her own personal pleasure, namely to sail a boat from Hawaii to the continental United States.

"III. Petitioner was granted a leave of absence by her supervisor who also advised her that the company might be undergoing changes due to fluctuations in the candle market, which would mean the laying off of personnel, and could, therefore, give her no assurance that she would be reemployed upon her return.

"IV. Petitioner took her leave of absence and returned prior to the expiration of her leave. On September 7, 1973, her employer advised Petitioner that she could not return to work because her position had been eliminated on August 16, 1973.

"V. Petitioner's position with her employer was abolished along with that of a number of other employees as part of a general cutback by her employer. On August 16, 1973 petitioner lacked sufficient seniority to have avoided the layoff.

"VI. Petitioner's employer did not give the Employment Development Department notice that petitioner had voluntarily left her work without good cause within five (5) days after the termination of her service as provided for in Unemployment Insurance Code section 1256.

"VII. When petitioner subsequently applied for unemployment insurance benefits, her application was denied on the ground that she had quit her work without good cause.

"From the foregoing Findings of Fact, the court now makes the following [¶] CONCLUSIONS OF LAW[:]

"I. In exercising its independent judgment upon the evidence presented in the administrative record, the Court is not bound by the findings and determination of the Referee or the Appeals Board.

"II. An employee is presumed not to have voluntarily left his work without good cause unless his employer has given written notice to the contrary to the Employment Development Department within five (5) days after the termination of the employee's service and has set forth in the notice facts sufficient to overcome the presumption. This presumption is a rebuttable presumption which imposes on the employer or the Department the burden of proving by a preponderance of the evidence that the claimant quit work voluntarily without good cause.

"III. An employee who obtains a leave of absence without securing an unconditional guarantee that he may return to his employment at the expiration of the leave of. absence voluntarily quits his employment within the meaning of Unemployment Insurance Code section 1256.

"IV. Pursuit of personal enjoyment does not constitute good cause for terminating employment within the meaning of Unemployment Insurance Code section 1256.

"V. The preponderance of the evidence shows that when petitioner obtained her leave of absence, she did not secure an unconditional guarantee that she could return to work at the expiration of her leave and further shows that she took her leave for reasons of personal pleasure. Accordingly, petitioner voluntarily terminated her employment and consequently left her work without good cause and under Unemployment Insurance Code section 1256 is disqualified from receiving Unemployment Compensation Benefits in connection with this claim.

"VI. Respondent Appeals Board therefore did not act in excess of or without jurisdiction and did not abuse its discretion in denying petitioner's application for Unemployment Insurance Benefits.

"VII. Accordingly, judgment should be entered denying the Petition for Writ of Mandate and awarding respondent costs of suit incurred herein."

It will be observed that the trial court deemed petitioner "disqualified" for benefits pursuant to section 1256, *after* the events which the court found to have occurred in August and September (findings IV and V), upon the theory that she had "left . . . [her] . . . work voluntarily without good cause" when she commenced her "leave of absence" for personal pleasure in July (finding No. II), without having secured at that time (i.e., in July) "an unconditional guarantee that she could return to work at the

expiration of her leave . . . ." (Conclusion of law No. V.) Petitioner challenges this theory, both in principle and as applied by the trial court.

The theory is applied in conclusion of law No. V as expressed in No. III: "An employee who obtains a leave of absence without securing an unconditional guarantee that he may return to his employment at the expiration of the leave of absence voluntarily quits his employment within the meaning of . . . section 1256." We have concluded that the theory, thus inflexibly stated, is invalid because it fails to comprehend the material distinction between suspension of work and termination of employment; that it was invalidly applied to the facts *as found by the trial court* in the present case; and that those facts require reversal of the judgment with directions that petitioner be granted the relief sought.

The parties have not cited, nor have we found, any judicial decision in this state which specifically supports or negates the trial court's theory as stated in its conclusion of law No. III. In a single decision which generally interrelates a "leave of absence" with section 1256 (*Douglas Aircraft Co. v. California Unemp. Ins. Appeals Board* (1960) 180 Cal.App.2d 636 [4 Cal.Rptr. 723]), the affected employee had taken a "leave of absence" from her work because she was pregnant. (*Id.,* at pp. 638-639.) Such leave, in a case of pregnancy, was required under the terms of a collective bargaining agreement which controlled her job. (*Ibid.*)

The *Douglas* court held in effect that the compulsory nature of the leave made it *involuntary* on the employee's part, so that it did not constitute her having "left . . . [her] . . . work voluntarily without good cause" within the meaning of section 1256. (*Douglas Aircraft Co. v. California Unemp. Ins. Appeals Board, supra,* 180 Cal.App.2d 636 at p. 642 et seq.) The decision therefore does not define the effect of section 1256 upon a strictly *voluntary* leave of absence such as was taken here (see the trial court's findings II and III, quoted *ante*), and we are aware of no judicial decision in California which does.

Thus lacking judicial authority for conclusion of law No. III, respondent Board cites in support thereof an administrative decision reached by itself in an earlier proceeding (Matter of Castiglione, Precedent Benefit Decision No. P-B-145 (1972))[3] and two similar decisions by its counterpart bodies in Tennessee and New York (cited at fn. 7, *post*). The

---

[3]Pertinent here are the following provisions of section 409: ". . . The appeals board shall meet as a whole . . . to consider and decide cases which present issues of first impression or which will enable the appeals board to achieve uniformity of decisions . . . .

trial court apparently followed the Castiglione decision as authority for conclusion of law No. III.[4] We therefore summarize and quote the decision to this extent (the genesis of conclusion of law No. III appears in italics, which have been added):

Pursuant to a discussion with her employer, the employee-claimant took a six-month "leave of absence" from her secretarial position. The purpose of the leave was to permit her to accompany her husband to his new employment in Europe. She went there with him as planned, but returned to California when the husband lost his job about five months later.

"The claimant contacted the employer approximately ten days before the expiration of her six-month leave of absence and asked about going back to work." She was told "that they did not have a job opening for her." Her subsequent claim for unemployment compensation benefits reached respondent Board upon an appeal, by her employer, from a referee's decision favorable to her. The Board denied her claim, stating further material facts and its reasoning in this language:

"We must first determine whether the claimant or the employer was the moving party in terminating the work and on what date the work actually came to an end. The referee found that the claimant entered upon a leave of absence and that her work terminated when her employer did not return her to work at the expiration of the leave. We would agree with the referee's finding if the leave of absence was bona fide. However, in our opinion it was not. *A bona fide leave of absence must contain an assurance by the employer that upon termination of the period of absence the employee will be returned to the same or like work.*

"Here the employer told the claimant before she left that she would be reemployed only if there was an opening for her.[5] In other words, there

The appeals board, acting as a whole, may designate certain of its decisions as *precedents. . . .* The director and the appeals board referees *shall be controlled by such precedents except as modified by judicial review. . . ."* (Italics added.) For the nomenclature and form employed in our citation of Decision No. P-B-145, see *Gibson* v. *Unemployment Ins. Appeals Bd.* (1973) 9 Cal.3d 494, 496, fn. 2 [108 Cal.Rptr. 1, 509 P.2d 945].

[4]This fact appears for several reasons: The director's representative expressly—and exclusively—cited the decision at the hearing before the referee on petitioner's claim. The referee principally cited it in his decision, which the Board adopted. The Board relied upon it in briefing the case to the trial court. The court's reliance upon the decision also appears from the language thereof, quoted in the text *infra.*

[5]Compare the facts of the present case as found by the trial court in finding No. III, quoted *ante.*

was no guarantee of return to work. The so-called leave of absence was only a promise of preferential rehire. The purely potential nature of the claimant's rehire status is evident in her choice of language when she called the employer at the expiration of her leave. The claimant stated that she called to tell the employer she was back and asked if she could come in to discuss the possibility of a job.[6] In summary, we hold that *a bona fide leave of absence for unemployment insurance purposes must contain a guarantee of reemployment.* Because the claimant did not enter upon such a bona fide leave of absence, we must conclude that she voluntarily left her work at the time she went to Europe. . . ." (Matter of Castiglione, *supra,* Precedent Benefit Decision No. P-B-145.)

It is apparent from this decision that the Board correctly interpreted the circumstances of the employee's taking a "leave of absence" as amounting to her voluntary *termination* of her employment, with the only surviving connection between her and the employer consisting of a "promise of preferential rehire" by the latter. One job thus ended; the "promise" was to employ her in another; and it was neither performed nor enforceable, for failure of a condition precedent, in accordance with the understanding of the parties. (See the text at fn. 5, *ante.*) Essentially the same facts, and the same reasoning adverse to the claimant, appear in the two administrative decisions cited by the Board from other jurisdictions. (Matter of Carney, Tennessee Board of Review Decision No. 66-BR-346 (1966); Matter of Stavrou, New York Unemployment Insurance Appeal Board Decision No. 172,222 (1972).)[7]

Under the circumstances thus interpreted, the Board correctly determined that there was no "bona fide leave of absence." (Matter of Castiglione, *supra,* Precedent Benefit Decision No. P-B-145.) There was instead a voluntary termination of employment by the employee which was effected for reasons of her personal pleasure or convenience only.

---

[6]Of the parallel event in the present case, the undisputed evidence is in marked contrast. After petitioner had returned to Santa Cruz, she visited the employer's factory on August 29, 1973, and told the personnel supervisor that she "would be back [to work] on the 13th of September." The supervisor said "fine, . . . great." After a further conversation on September 6, the supervisor telephoned petitioner on September 7 and said that she (petitioner) "had been laid off along with about forty other people *on the 16th of August.*" (Italics added.) (See the trial court's findings IV and V, quoted in the text *ante.*)

[7]The New York decision was affirmed by the appellate division of that state's supreme court, but without opinion. (*Stavrou* v. *Levine* (1973) 339 N.Y.S.2d 1012.) For digests of the two decisions respectively, see Social Security—Unemployment Insurance Reports (C. C. H., Inc.) Tennessee, par. 8207.08; *op. cit.,* New York, par. 10,335. We have examined the original decisions, which the Attorney General obtained at our request.

This having occurred, it properly produced the result that she was "disqualified" for unemployment compensation benefits, when the "promise of preferential rehire" did not materialize, because she had theretofore "left . . . [her] . . . work voluntarily without good cause" as provided in section 1256. (See *Perales* v. *Department of Human Resources Dev.* (1973) 32 Cal.App.3d 332, 336-337 [108 Cal.Rptr. 167]; *Zorrero* v. *Unemployment Ins. Appeals Bd.* (1975) 47 Cal.App.3d 434, 438-440 [120 Cal.Rptr. 855].)

This result is consistent with the principle that a person will be "disqualified" for benefits under section 1256 if his unemployment is attributable to his own "fault." The element of "fault" is conceived in terms of the proximate cause of his unemployment and whether it is the result of his own volition. It is decisive of his eligibility under the section because the unemployment compensation insurance law must be interpreted in light of its purposes, which are to provide benefits "for persons unemployed *through no fault of their own,* and to reduce *involuntary* unemployment . . . ." (§ 100 [italics added]; *Whitcomb Hotel, Inc.* v. *Cal. Emp. Com.* (1944) 24 Cal.2d 753, 758 [151 P.2d 233, 155 A.L.R. 405]; *Cal. Portland Cement Co.* v. *Cal. Unemp. Ins. Appeals Board* (1960) 178 Cal.App.2d 263, 269-270 [3 Cal.Rptr. 37]; *Perales* v. *Department of Human Resources Dev., supra,* 32 Cal.App.3d 332 at pp. 335-336. For the same "volitional" test of eligibility as applied in different—but related—factual and statutory contexts, see *Coast Packing Co.* v. *Cal. Unemp. Ins. Appeals Bd.* (1966) 64 Cal.2d 76, 77-80 [48 Cal.Rptr. 854, 410 P.2d 358] [work stoppage in a "trade dispute" covered in § 1262]; *Rowe* v. *Hansen* (1974) 41 Cal.App.3d 512, 520-521 [116 Cal.Rptr. 16] ["misconduct" under § 1256].)

It necessarily follows that an employee-claimant may not be "disqualified" for benefits under section 1256 if there has been a termination of his employment which is *not* attributable to his own "fault." The questions therefore presented are whether petitioner's taking her "leave of absence" amounted to a termination of her employment when the leave commenced; if not, whether a termination occurred thereafter; and whether a termination, if and when it occurred, was brought about by her own "fault."

A line of California decisions dealing with "leaves of absence" involved *public* officers or employees who took them pursuant to statutory or local charter provisions, and did not present issues under the unemployment compensation insurance law. Although they are not specifically apposite for these reasons, the decisions are authority for the

broad principle that "a leave [of absence] does not create a vacancy in the position [held]. It merely suspends the occupancy of the position, . . . leaving the employee with certain rights which he may assert" upon the expiration of the leave. (*Gray* v. *Bolger* (1958) 157 Cal.App.2d 583, 587 [321 P.2d 485]. Cf. *McCoy* v. *Board of Supervisors* (1941) 18 Cal.2d 193, 198-199 [114 P.2d 569]; *Dierkes* v. *City of Los Angeles* (1945) 25 Cal.2d 938, 944 [156 P.2d 741].)

According to the language just quoted, a "leave of absence," taken by an employee, is not a termination of the employment: it preserves the employer-employee relationship in a state of suspense. Courts in other jurisdictions have reached this conclusion in varying factual and legal situations. Thus, "[a] leave of absence is not a complete separation from employment; it connotes *a continuity of the employment status,* during which time performance of the duties of his work by the employee and remuneration by employer and other fringe benefits may be *suspended.*" (*Chenault* v. *Otis Engineering Corporation* (Tex.Civ.App. 1967) 423 S.W.2d 377, 383 [italics added]. *Accord: State* v. *Grayston* (1942) 349 Mo. 700 [163 S.W.2d 335, 341]; *State* v. *Akron Civil Service Commission* (1953) 95 Ohio App. 385 [53 Ohio Ops. 409, 120 N.E.2d 127, 130]; *Bowers* v. *American Bridge Co.* (1956) 43 N.J.Super. 48 [127 A.2d 580, 585].)

The same conclusion has been followed and applied by the courts of other states in favor of employee-claimants in unemployment compensation cases. In *South Cent. Bell Tel. Co.* v. *Administrator, Div. of E.S.* (La.App. 1971) 247 So.2d 615, the affected employee had taken a six-month "leave of absence," by agreement with her employer, for the purely personal purpose of caring for her children. (*Ibid.*) She was denied reemployment at the termination of the leave, and applied for unemployment compensation benefits. (*Id.,* at p. 616.) Affirming a referee's decision granting her the benefits claimed, and acting under a statute virtually identical with section 1256, the Louisiana Court of Appeal stated:

"In ordinary usage, the term 'leave of absence' means that the employee is given permission to be absent from work for a certain time at the end of which the employee will return to his employment status. . . . Thus, in the ordinary case, *where there is a leave of absence mutually agreed upon by the employer and the employee, the employee does not voluntarily quit his job.*" (*South Cent. Bell Tel. Co.* v. *Administrator, Div. of E.S., supra,* 247 So.2d 615 at p. 617 [italics added]. Accord: *Vincent* v. *State* (1973) 113 N.H. 383 [308 A.2d 526, 527]; *Neilsen* v. *Department of*

*Employment Security* (1973) 113 N.H. 642 [312 A.2d 708, 710]. See also *Southern Bell T. & T. Co.* v. *Administrator, Div. of E.S.* (La.App. 1967) 203 So.2d 924, 925-926 [dis. opn.]; *Southern Bell T. & T. Co.* v. *Administrator, Div. of E.S.* (1968) 252 La. 519 [211 So.2d 634, 635-636]. For decisions similarly defining the effect of a "leave of absence," but denying unemployment compensation benefits upon distinguishable facts or statutory language, see *Southwestern Bell Telephone Co.* v. *Thornbrough* (1960) 232 Ark. 929 [341 S.W.2d 1, 2-5]; *Goodyear Tire & Rub. Co.* v. *Employment Sec. Bd. of Rev.* (1970) 205 Kan. 279 [469 P.2d 263, 268-270].)

In the single California decision which we have identified as involving a "leave of absence" within the context of the unemployment compensation insurance law, the Court of Appeal concluded that the affected employee's taking an *involuntary* leave did not, as such, mean that her employment had been completely or technically terminated for the purpose of determining whether she was "disqualified for . . . benefits" under section 1256. (*Douglas Aircraft Co.* v. *California Unemp. Ins. Appeals Board, supra,* 180 Cal.App.2d 636 at pp. 640-641. See *Morris* v. *Unemployment Ins. Appeals Bd.* (1973) 34 Cal.App.3d 1002, 1008, fn. 5 [110 Cal.Rptr. 630].)

In its decision quoted above, the Louisiana Court of Appeal further stated: " 'If an employer may grant a leave to an employee for a day, a week, a month, or longer, and refuse him work at the termination of his leave and thereby disqualify him for unemployment compensation, similar action may be taken with reference to all its employees. Such an interpretation would clearly lead to a result not contemplated or intended by the Legislature and would defeat the purpose of the statute as social and economic legislation, the benefits of which were intended to be extended so far as possible within the limits imposed by expressed restriction.' " (*South Cent. Bell Tel. Co.* v. *Administrator, Div. of E.S., supra,* 247 So.2d 615 at p. 618 [quoting and following the dis. opn. (cited *ante*) in *Southern Bell T. & T. Co.* v. *Administrator, Div. of E.S.,* 203 So.2d 924 at p. 926].)

■ We are constrained to apply a similar construction to the California unemployment compensation insurance law: as is true of Louisiana's, it is remedial and must be liberally construed to accomplish its social and economic objectives. (*Garcia* v. *Industrial Accident Com.* (1953) 41 Cal.2d 689, 693 [263 P.2d 8]; *Cal. Portland Cement Co.* v.

*California Unemp. Ins. Appeals Board, supra,* 178 Cal.App.2d 263 at p. 270; *Silva* v. *Nelson* (1973) 31 Cal.App.3d 136, 140 [106 Cal.Rptr. 908].)

■ We conclude from the foregoing considerations that the effect of an individual's being unemployed, subsequent to his taking a so-called "leave of absence" pursuant to an agreement reached with his employer, is to be assessed according to the terms of the agreement. Its terms may present two alternative situations, as follows:

(1) The first occurs where the agreement amounts to actual termination of the employment, with the employee receiving no more than a promise of reemployment if there is *a* job available for him when the "leave" expires. The distinctive features of this arrangement àre the termination of the one job and the prospect of reemployment at another. Their effect means that the arrangement is not a true "leave of absence," even if the parties call it one. This is because the "continuity of the employment status" at the one job, as ordinarily connoted by the term "leave of absence" (*Chenault* v. *Otis Engineering Corporation, supra,* 423 S.W.2d 377 at p. 383; *South Cent. Bell Tel. Co.* v. *Administrator, Div. of E.S., supra,* 247 So.2d 615 at p. 617), terminates with the job.

An employee in this situation is "unemployed" throughout the period of the so-called "leave of absence" because he is performing no work and receiving no pay. (§ 1252.)[8] However, if he took the "leave" voluntarily and for purely personal reasons only, he is "disqualified for unemployment compensation benefits" during the leave period because of the crucial fact that he "left his most recent work voluntarily without good cause." (§ 1256; *Perales* v. *Department of Human Resources Dev., supra,* 32 Cal.App.3d 332 at pp. 336-337; *Zorrero* v. *Unemployment Ins. Appeals Bd., supra,* 47 Cal.App.3d 434 at pp. 437-440.) If he is denied reemployment in another job at the end of the period, the disqualification persists because the former job was terminated for the same reason. This result is required because, the termination having initially been effected "voluntarily without good cause" upon the employee's part, his consequent unemployment at any time thereafter is attributable to his own "fault." (See § 100, quoted *supra; Perales* v. *Department of Human Resources Dev., supra,* at pp. 335-336.)

---

[8]As pertinent, section 1252 provides that "[a]n individual is 'unemployed' in any week during which he performs no services and with respect to which no wages are payable to him . . . ."

(2) The alternative situation occurs when a true "leave of absence" is agreed upon by employer and employee, in that they contemplate a continuity of the employment status (as distinguished from its termination) but that no work will be performed, and no remuneration will be paid, during the leave period. (*Chenault v. Otis Engineering Corporation, supra,* 423 S.W.2d 377 at p. 383; *South Cent. Bell Tel. Co. v. Administrator, Div. of E.S., supra,* 247 So.2d 615 at p. 617.) The distinctive features here are the ongoing employment "status" at the one job (as distinguished from its termination) and the contemplation that active work *at that job*—not "a" job—will be resumed when the leave expires.

An employee who takes a genuine "leave of absence," voluntarily and for purely personal reasons, is also "unemployed" during the leave period. (§ 1252: see fn. 8, *ante.*) He is similarly "disqualified" for benefits *during the period* because he "left his . . . work voluntarily without good cause" (§ 1256) and his unemployment during the leave is therefore attributable to his own "fault." But where the ongoing job is terminated by the employer during the leave, with the result that it—*the* job—is not available to the employee at the expiration of the leave as anticipated by the parties, his consequent unemployment at that time has been caused by the employer's action alone. This means that his first-instance reasons for having taken the "leave of absence" are no longer relevant for purposes of determining his eligibility for unemployment compensation benefits, that he is not currently unemployed due to his own "fault," and that he is accordingly not "disqualified for . . . benefits" by reason of having "left his . . . work voluntarily without good cause." (§ 1256.)

In the Board's precedent decision upon which the trial court relied (Matter of Castiglione, *supra,* Precedent Decision No. P-B-145: see the text at fn. 4, *ante*), the disposition was correct because the facts showed the first of the two alternative situations defined above. The decision is not precedent for the second one, in which the facts are distinguishable as we have previously stated. Moreover, the Board's statement therein that "a bona fide leave of absence for unemployment insurance purposes must contain *a guarantee of reemployment*" (italics added here) ignores the essential distinction: the unqualified reference to "reemployment" may comprehend the employee's being rehired at a new job, on the one hand, or his resumption of work at his old job on the other.

Finally, where the employment relationship is not for a fixed term, the existence and effect of a genuine "leave of absence" is not dependent

upon a "guarantee" by the employer (or upon the "unconditional guarantee" to which the trial court referred in conclusion of law No. III) that the employee may or shall return to work at the expiration of the leave. If this were so, the employment "status," which remains in effect during the leave for purposes of eligibility for unemployment compensation benefits, would not be terminable at the will of the employer as expressly provided in Labor Code section 2922.[9] The employer is therefore free to terminate the "employment" during the leave; the only effect of this action is that the consequent unemployment is not attributable to the employee's "fault."

■ The undisputed facts of the present case, as found by the trial court, show that petitioner took a genuine "leave of absence" as defined in the second alternative situation discussed above. She was not employed for a fixed term. When she commenced the leave in July 1973, she was given no "assurance that she would be reemployed upon her return," because of the possible "laying off of personnel" by the employer. (Finding No. III, *supra.*) The employer accordingly reserved the right to terminate her job at will, as provided in Labor Code section 2922. (See fn. 9, *ante.*)

Petitioner nevertheless retained her job, as such and for pertinent purposes, during the leave. Her "position" was "eliminated on August 16, 1973," and not earlier. (Finding No. IV.) This occurred "as part of a general cutback by her employer" which was effected *on August 16, 1973,* (Finding No. V.) *"On August 16, 1973,* petitioner lacked sufficient seniority to have avoided the layoff." (*Ibid.* [italics added here].)

According to the undisputed facts, petitioner's unemployment was caused, not by her own "fault" for having taken the voluntary—and genuine—leave of absence "without good cause," but by the "layoff" which occurred while she was on the leave. It follows, for the reasons discussed above, that she became unemployed on the date following that upon which she would have returned from the leave if the layoff had not intervened (i.e., on September 13, 1973: see fn. 6, *ante*); and that she became eligible for unemployment compensation benefits in due course.

[9]The cited statute provides in pertinent part: "An employment, having no specified term, may be terminated at the will of either party on notice to the other...."

The judgment is reversed. The cause is remanded to the trial court with directions to enter a judgment granting relief consistent with the views herein expressed.

Christian, J., and Emerson, J.,* concurred.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.