[No. C037880. Third Dist. Jan. 3, 2002.]

CITY OF SACRAMENTO, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD and ERIC
SAYLORS, Respondents.

COUNSEL

Twohy, Darneille & Frye and Erik E. Frye for Petitioner.

No appearance for Respondent Workers' Compensation appeals Board.

Timmons, Owen & Owen and John P. Timmons for Respondent Eric Saylors.

OPINION

BLEASE, Acting P. J.—The City of Sacramento (the City) seeks a writ of review to overturn a decision of the Workers' Compensation Appeals Board

(the Board) which held that an employee, Eric Saylors, was eligible as a "fire recruit" for enhanced benefits under Labor Code section 4850.[1]

Section 4850 provides for a leave of absence at full salary in lieu of temporary disability payments for public safety employees, including firefighters, who become disabled in the course of employment. The City contends fire recruits do not engage in firefighting and are not entitled to section 4850 benefits. We agree and will annul the Board's order.

### FACTUAL AND PROCEDURAL BACKGROUND

On April 21, 1998, Eric Saylors injured his back during a training exercise as a "fire recruit" for the City.[2] The City acknowledged compensability, furnished medical treatment and paid Saylors temporary disability benefits while he was disabled. Saylors applied for benefits under section 4850; they were denied, and he applied to the Board for an adjudication of his claim. The salient facts determined at the hearing are not in dispute.

The City's personnel job description provides that a "fire recruit" is one who "attend[s] and participate[s] in the Sacramento Fire Training Academy in order to receive basic training in fire fighting methods, equipment operation, medical aid, and physical fitness." It is a recruiting and training-level classification. A recruit who satisfactorily completes a 16-week training course at the academy qualifies for probationary status as a firefighter or firefighter-paramedic.

The training includes classroom instruction, participation in ground exercises, and live fire exercises. The ground exercises account for approximately three-quarters of the total training, during which the recruits learn to perform the manipulative skills required to fight fires.

The live fire training exercises are the last phase of the training and consist of a three-day session in which the recruits are taught how to attack and extinguish a fire and how to search a building for victims. Their ability to handle fire conditions and to withstand heat is determined during this phase.

The training involves a closely controlled live fire in an empty brick building, simulating a two-bedroom, one-bath house, using hay and wood

---

[1] All further section references are to the Labor Code unless otherwise designated.

[2] During the last exercise of his academy training, Saylors was required to climb a 50-foot ladder, lock his foot in at the top, release his hands, and lean back. Saylors did as required, however he leaned back so far, "[h]e almost looked like he folded himself back over completely."

pallets as fuel. The recruits enter the building wearing the same clothing worn by firefighters during an actual fire. Under these conditions, the recruits perform live rescue operations in which they must locate training officers, hidden in the smoke-filled building, and pull them to safety.

The recruits are taught "overhaul" which, for a firefighter, involves removing walls and ceilings to look for hidden fires, removing articles that have been damaged by the fire, and performing general cleanup operations. In the training exercises however, the recruits only remove the debris from the hay and pallets used to fuel the fire. The recruits are not required to perform the same "overhaul" duties as firefighters, and the attendant risks and injuries to the recruits during "overhaul" differ from those suffered by firefighters.[3]

The live fire training drills are staged under strictly controlled and supervised conditions with built-in safety precautions that make them much safer than a real fire.[4] The recruits are accompanied by a safety instructor with backup teams and extra safety hoses. While the recruits are exposed to the heat and smoke of the fire, they are not exposed to the risks of falling ceilings and other falling objects. Recruits are never sent to real fire scenes to fight fires, never taken to hazardous material sites, and do not perform emergency medical aid.[5]

Saylors successfully completed the academy and received a certificate of training on May 8, 1998. During his time at the academy, he worked a 40-hour work week rather than the 24-hour work shift of a firefighter, and wore a recruit's uniform rather than a firefighter's uniform.

The workers' compensation judge (WCJ) found that a fire recruit is a classification different in kind than that of a firefighter because a "recruit's function is to learn rather than act on the front lines in firefighting or suppression." He concluded that at the time of Saylors's injury, Saylors's "job functions did not clearly fall within the scope of active firefighting and prevention service."

Saylors filed a petition for reconsideration. The WCJ issued his report and recommendation requesting the petition be denied.

---

[3]Recruits may suffer lower body injuries to the backs and legs from bending over, shoveling debris, and carrying various articles out of the building, while firefighters may suffer upper body injuries to their necks, heads, and eyes from falling debris.

[4]The live fire training exercises for recruits are safer than the in-service live fire training exercises engaged in by firefighters.

[5]On one occasion, Saylors's arson detection class was given permission to go to an actual fire involving fatalities so that the class could observe the procedures taken by an arson investigator in the field.

The Board granted reconsideration. In its opinion and decision after reconsideration it reversed the WCJ's determination and amended the findings and order to extend section 4850 benefits to Saylors.

### DISCUSSION

■ The City contends Saylors is not entitled to the enhanced benefits of section 4850 because he was a fire recruit rather than a firefighter at the time of his injury.

The sole question is whether a fire recruit is a firefighter under section 4850. ■ Because that question turns on an interpretation of section 4850, it presents a question of law. (*Biggers v. Workers' Comp. Appeals Bd.* (1999) 69 Cal.App.4th 431, 435 [81 Cal.Rptr.2d 628] (hereafter *Biggers*); *Poliak v. Board of Psychology* (1997) 55 Cal.App.4th 342, 348 [63 Cal.Rptr.2d 866].)

■ The version of section 4850 in effect when Saylors was injured provided in pertinent part:

"(a) Whenever any . . . city, county, or district firefighter . . . who is a member of the Public Employees' Retirement System . . . is disabled, whether temporarily or permanently, by injury or illness arising out of and in the course of his or her duties, he or she shall become entitled, regardless of his or her period of service with the city or county, to leave of absence while so disabled without loss of salary in lieu of temporary disability payments . . . .

"(b) This section . . . . shall also apply to city, county, or district firefighters who are members of the Public Employees' Retirement System . . . and excludes employees of the city fire department, county fire department, and of any fire district whose principal duties are those of a telephone operator, clerk, stenographer, machinist, mechanic, or otherwise, and whose functions do not clearly fall within the scope of active firefighting and prevention service. . . ." (Stats. 1995, ch. 474, § 1.)

The City argues that a fire recruit is not a firefighter within section 4850, subdivision (a), but falls within the excluded class described in subdivision (b) as an "otherwise [classification], and whose functions do not clearly fall within the scope of active firefighting and prevention service."[6] We agree.

The term "firefighter" is not expressly defined in the statute. Like many words of ordinary usage, it bears a commonly understood meaning; i.e., one who is employed to put out fires.

---

[6]There is no dispute that at the time of his injury, Saylors was employed by the City of Sacramento Fire Department as a firefighter recruit and was a member of PERS (Public Employees' Retirement System).

By contrast, section 4850, subdivision (b) "excludes employees . . . whose principal duties are those of a telephone operator, clerk, stenographer, machinist, mechanic, *or otherwise, and whose functions do not clearly fall within the scope of active firefighting and prevention service.*" (Stats. 1995, ch. 474, § 1, italics added.) The enumerated categories are manifestly not involved in firefighting. Nor is the catchall category "otherwise," which is defined by a dictionary to mean "in a different way or manner," and which is modified by the italicized functional test. (Webster's 3d New Internat. Dict. (1971) p. 1598.) It is a general term used to enlarge, rather than restrict, the excluded class of employees. (But see *Biggers, supra,* 69 Cal.App.4th at p. 440 [interpreting phrase "or otherwise" in restrictive sense].)

Simply put, firefighters are employees of the fire department "active[ly]" engaged in "firefighting and fire prevention services." They are covered by section 4850. All other employees of the fire department are excluded from coverage.

This construction is consistent with the purpose of section 4850, "to provide special benefits to police, sheriffs, and firefighters. 'The reason for such exceptional treatment . . . is obvious: not only are their occupations particularly hazardous, but they undertake these hazards on behalf of the public. The Legislature undoubtedly sought to ensure that policemen and firemen would not be deterred from zealous performance of their mission of protecting the public by fear of loss of livelihood.' " (*Biggers, supra,* 69 Cal.App.4th at p. 440, quoting 51 Ops.Cal.Atty.Gen. 32, 34 (1968).)

Saylors contends the workers' compensation law must be liberally construed (§ 3202) and that to train and prepare recruits to become proficient firefighters, they must be and are subjected to substantially the same risks of injury as firefighters. As a result, he argues, the interests served by section 4850 apply equally to fire recruits. We disagree.

█ The rule that "[a]ll aspects of workers' compensation law . . . are to be liberally construed in favor of the injured worker" (*Save Mart Stores v. Workers' Comp. Appeals Bd.* (1992) 3 Cal.App.4th 720, 723 [4 Cal.Rptr.2d 597]), only applies when the provisions of the law are susceptible of more than one meaning. (*Biggers, supra,* 69 Cal.App.4th at p. 441; *Burns v. Workmen's Comp. App. Bd.* (1969) 2 Cal.App.3d 539, 543 [82 Cal.Rptr. 678].) It will not be applied to defeat a construction embodied in the plain language of the statute. (*Ruiz v. Industrial Acc. Com.* (1955) 45 Cal.2d 409, 413 [289 P.2d 229].)

█ Thus the question is whether Saylors, as a fire recruit, was employed to put out fires. That turns on the City's job description of "fire recruit."

According to the City's job description, a "firefighter" is one who "protect[s] life and property by combating, extinguishing, and preventing fires and . . . perform[s] emergency medical assistance." The distinguishing characteristics of a firefighter are that it "is a journey-level classification. Incumbents are expected to perform the full range of duties of a [f]irefighter. . . ." (Personnel, City of Sacramento, Job Descript. for City, Classif., § 5010 <http://www.cityofsacramento.org/personnel/employment.html> [as of Dec. 31, 2001].) By contrast, a "fire recruit" is one who "attend[s] and participate[s] in the Sacramento Fire Training Academy in order to receive basic training in fire fighting methods, equipment operation, medical aid, and physical fitness." (*Ibid.*)

Applying the functional test, a fire recruit's function is to learn the knowledge and skills of a firefighter. Fire recruits do not undertake hazards on behalf of the public. They do not engage in firefighting and prevention services, they do not perform emergency duties involving hazardous materials, nor do they provide medical assistance that might subject them to contagious diseases. (Personnel, City of Sacramento, *supra*, Classif., § 5010.) While their training involves some degree of risk not encountered by remote support personnel, recruits are not subjected to the same risks as firefighters. Nor does their rigorous training in the hopeful expectation that they will some day undertake hazards on behalf of the public entitle them to enhanced benefits before that day comes. (Cf. *Charles v. Workers' Comp. Appeals Bd.* (1988) 202 Cal.App.3d 781, 784 [248 Cal.Rptr. 805] [civilian paramedic a firefighter who performs some of the duties of firefighter on daily basis and assumes some of emotional and physical risks] and *Biggers, supra,* 69 Cal.App.4th at pp. 440-441 [courtroom bailiff an employee of sheriff's office who protects public and is subject to same kind of hazards faced by sheriff's deputies].)

Based upon the clear language and purpose of the statute, the City's job classification descriptions, and the evidence, "fire recruits" are not firefighters entitled to section 4850 benefits. Accordingly, Saylors is not entitled to section 4850 benefits.

## DISPOSITION

The order is annulled. Each party shall bear its own costs on review.

Davis, J., and Nicholson, J., concurred.

A petition for a rehearing was denied January 23, 2002, and the opinion was modified to read as printed above. The petition of respondent Eric Saylors for review by the Supreme Court was denied April 10, 2002. George, C. J., did not participate therein. Kennard, J., was of the opinion that the petition should be granted.