Filed 1/29/14

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Nevada)

----

| | |
|---|---|
| COUNTY OF NEVADA, | C074133 |
| Petitioner, | (Super. Ct. No. ADJ8213231) |
| v. | |
| WORKERS' COMPENSATION APPEALS BOARD and DAVID LADE, | |
| Respondents. | |

ORIGINAL PROCEEDING:  Petition for writ of review.  Decision annulled. Remanded for further proceedings.

Lenahan, Lee, Slater & Pearse and Ira G. Clary, for Petitioner.

Mastagni, Holstedt, Amick, Miller & Johnsen and John R. Holstedt, for Respondent, David Lade.

No appearance on behalf of Respondent, Workers' Compensation Appeals Board.

1

Labor Code section 4850 guarantees certain public safety employees who are disabled from an on-the-job injury "a leave of absence while so disabled without loss of salary in lieu of temporary disability payments." (Lab. Code,[1] § 4850, subd. (a).) The question here is whether this section applies to guarantee no loss of salary to an employee who has returned to work, albeit on modified duty. We conclude that it does not. A "leave of absence" is a foundational prerequisite to the application of section 4850's no-loss-of-salary guarantee, and a person who has returned to work, even on modified duty, is not on a leave of absence. Accordingly, we will annul the decision of the Workers' Compensation Appeals Board (the board) and remand for further proceedings.

FACTUAL AND PROCEDURAL BACKGROUND

While working as a deputy sheriff for the Nevada County Sheriff's Department in mid-August 2011, David Lade injured his right shoulder. At the time of his injury, Lade was working a night shift schedule that entitled him to 5 percent shift differential pay.[2] He had been earning the shift differential since 2004, and the differential was paid regardless of whether he worked, took vacation, used sick leave, or received holiday pay.

Due to his injury, Lade was off work until late September, when he returned to work at full duty with no restrictions. In late January 2012, however, Lade was placed on modified duty at the direction of his physician. From then until he had surgery in early March, Lade worked light duty on the day shift. From the date of his surgery until late April, Lade was again off work. In late April, he returned to work full time but remained

_____

[1]     All further section references are to the Labor Code.

[2]     The pertinent provision in the operative memorandum of understanding between the County of Nevada (the county) and the Nevada County Deputy Sheriff's Association provided as follows: "Regular employees who, within any pay period, are required to work 40 or more regularly-scheduled hours between 6:00 P.M. and 6:00 A.M. shall receive a shift differential of 5% of base salary for all hours worked during the subject pay period."

2

on modified duty. Sheriff's deputies on light duty are typically assigned to the day shift, and Lade was no exception.

While Lade was off work, he apparently received his regular full pay, including the 5 percent shift differential. While he was working on the day shift, however, Lade was not paid the differential.

Lade filed a claim for workers' compensation benefits that was accepted in November 2011. In November 2012, the parties went to trial before a workers' compensation judge (WCJ) on whether section 4850 entitled Lade to the shift differential while he was working modified duty on the day shift. As relevant here, section 4850 provides that whenever a sheriff's deputy[3] "who is employed on a regular, full-time basis, and is disabled, whether temporarily or permanently, by injury or illness arising out of and in the course of his or her duties, he or she shall become entitled, regardless of his or her period of service . . . to a leave of absence while so disabled without loss of salary in lieu of temporary disability payments . . . , if any, that would be payable under this chapter, for the period of the disability, but not exceeding one year, or until that earlier date as he or she is retired on permanent disability pension, and is actually receiving disability pension payments, or advanced disability pension payments pursuant to Section 4850.3." (§ 4850, subds. (a), (b)(4).)

The WCJ decided that Lade was entitled to the shift differential. Relying on *Johnson v. Contra Costa County Fire Protection Dist.* (1972) 23 Cal.App.3d 868, the WCJ reasoned that the county "could not change Officer Lade's status [from night shift to day shift] for purposes of [section] 4850 so as to avoid indemnification for the shift pay."

---

[3] Section 4850 also applies to city police officers, firefighters, and various other public safety employees. (See § 4850, subd. (b).)

3

The county petitioned the board for reconsideration, arguing (among other things) that the WCJ erred "in granting Labor Code [section] 4850 'leave of absence' benefits while [Lade] was not on a leave of absence and in fact [was] working modified duty." Adopting the report and recommendation of the WCJ, the board denied reconsideration.

The county subsequently sought a writ of review, which we issued.

DISCUSSION

The county contends the board erred in determining that Lade was entitled under section 4850 to the 5 percent differential for night shift work while he was working the day shift, because section 4850 "contains no provision for entitlement to benefits while the employee is working on light or modified duty." According to the county, section 4850 only "entitles the officer to be provided a statutorily guaranteed 'leave of absence' while [temporarily] disabled without loss of salary." In other words, in the county's view, section 4850 guarantees only that there will be no loss of salary while an injured worker is on a leave of absence of up to a year; it does not guarantee there will be no loss of salary once the injured worker returns to work.

"A fundamental rule of statutory construction is that a court should ascertain the intent of the Legislature so as to effectuate the purpose of the law. [Citations.] In construing a statute, our first task is to look at the language of the statute itself. [Citation.] When the language is clear and there is no uncertainty as to the legislative intent, we look no further and simply enforce the statute according to its terms." (*DuBois v. Workers' Comp. Appeals Bd.* (1993) 5 Cal.4th 382, 387-388.)

By its plain terms, "[s]ection 4850 provides for a leave of absence at full salary in lieu of temporary disability payments for public safety employees . . . who become disabled in the course of employment."[4] (*City of Sacramento v. Workers' Comp. Appeals*

---

[4] For employees who do not fall within the scope of section 4850, "[i]f the injury causes temporary total disability, the disability payment is two-thirds of the average

4

*Bd.* (2002) 94 Cal.App.4th 1304, 1306.)   Lade argues, however, that "the 'leave of absence' referred to in the statute refers to a leave of absence from full duty."   In essence, he claims that as long as he was working modified, light duty on the day shift, he was -- for purposes of section 4850 -- on a "leave of absence" from his regular night shift, and he was therefore entitled under the statute to no loss of salary as a result of his day shift work.

We do not believe section 4850 is reasonably susceptible to the interpretation Lade advances.   Guidance in interpreting the statute can be found in *Collins v. County of Los Angeles* (1976) 55 Cal.App.3d 594.   In *Collins*, a deputy sheriff resigned from his employment effective April 10, 1972.   (*Id.* at p. 595.)   Nearly two years later, "the Workmen's Compensation Appeals Board found Collins to have sustained an injury in the course and scope of his employment and awarded him temporary total disability benefits from April 10, 1972, until September 11, 1972."   (*Id.* at pp. 595-596.)   "By petition for writ of mandate filed in the superior court Collins [sought] an order compelling the County of Los Angeles to pay him full salary for the period April 10 to September 11, 1972, in lieu of the temporary disability payments awarded him by the board.  The trial court found that the resignation . . . made Labor Code section 4850 inapplicable, relegating Collins to traditional workmen's compensation benefits."   (*Id.* at p. 596.)

On appeal, the Court of Appeal agreed, stating as follows:   "Section 4850, in speaking of a 'leave of absence,' clearly contemplates the existence and eventual resumption of the employment relationship.  In Black's Law Dictionary, Fourth Edition, 'leave of absence' is defined as temporary absence from duty with intention to return. [Citations.]  We are unaware of any basis upon which one who unconditionally tenders

---

weekly earnings during the period of such disability, consideration being given to the ability of the injured employee to compete in an open labor market."   (§ 4653.)

5

his resignation from employment effective on a given date is thereafter entitled to the leave of absence contemplated by this section or for that matter otherwise. A resignation is in the nature of a notice of the termination of a contract of employment." (*Collins v. County of Los Angeles*, *supra*, 55 Cal.App.3d at p. 597.)

At its narrowest, *Collins* stands for the proposition that a person who is no longer employed cannot be on a leave of absence from his or her job. More broadly, however, *Collins* supports the conclusion that a "leave of absence" is a temporary *absence from employment* with the intent to return. This is the common sense understanding of the term. (See, e.g., *Lewis v. Unemployment Ins. Appeals Bd.* (1976) 56 Cal.App.3d 729, 742 ["when a true 'leave of absence' is agreed upon by employer and employee, . . . they contemplate a continuity of the employment status (as distinguished from its termination) but that *no work will be performed* . . . during the leave period" (italics added)]; Merriam-Webster's Collegiate Dict. (11th ed. 2006) p. 709, col. 1 [defining "leave of absence" as "permission to be absent from duty or employment"].) Applying this common sense understanding here, Lade could not have been on a leave of absence when he was actually *back at work* for the sheriff's department, even if he was working light duty on a different shift.

Lade contends this construction of section 4850 is "grossly narrow and incorrect" because it "would create a massive gap between the legislative intent behind section 4850 and its judicial interpretation." According to Lade, "[t]he purpose of section 4850 benefits is to provide one full year of compensation to the employee for the period that he is disabled and thereby unable to return to *full duty*." (Italics added.) In support of this assertion, however, Lade offers nothing but his own opinion.

The purpose behind a statute is to be determined primarily from the words the Legislature used in the statute. (See *DuBois v. Workers' Comp. Appeals Bd.*, *supra*, 5 Cal.4th at pp. 387-388.) Here, the Legislature provided that a public safety worker like Lade, when disabled, is entitled to a leave of absence at full salary instead of temporary

6

disability payments. There is nothing in section 4850 that guarantees a worker anything when he is no longer on a leave of absence and is instead back at work. Moreover, there is nothing in section 4850 that can be reasonably understood to mean that a leave of absence is anything less than *being absent* from one's employment.

The case on which the WCJ primarily relied -- *Johnson v. Contra Costa County Fire Protection Dist.* -- is inapposite. There, "Johnson, while employed as a fireman in a shift position by appellant district, sustained an injury on October 30, 1967. At the time, Johnson was a member of the County Employees' Retirement System. Subsequently, the Workmen's Compensation Appeals Board found that his injury arose out of and in the course of his employment, and that he was totally disabled commencing October 31, 1967, and indefinitely thereafter. [¶] Pursuant to Labor Code section 4850, Johnson was paid, in lieu of temporary disability payments, his full salary, except the holiday pay that a fireman in a shift position would have received between October 31, 1967, and October 30, 1968." (*Johnson v. Contra Costa County Fire Protection Dist.*, *supra*, 23 Cal.App.3d at p. 871, fns. omitted.)

The trial court granted Johnson's petition for a writ of mandate directing the issuance of the holiday pay pursuant to section 4850. (*Johnson v. Contra Costa County Fire Protection Dist.*, *supra*, 23 Cal.App.3d at pp. 870-871.) The county argued that he was not entitled to the holiday pay because he should be treated as a nonshift employee. (*Id.* at p. 871 & fn. 3.) The Court of Appeal disagreed, essentially holding that the holiday pay was part of the "salary" that Johnson was entitled to receive "without loss" under section 4850 during his leave of absence. (*Id.* at pp. 871-873.)

The fact that Johnson and Lade were both shift workers does not make the *Johnson* case apposite for purposes of the issue before us. Johnson was on a leave of absence because he was not at his job due to total disability. Lade, on the other hand, returned to work -- albeit doing modified duty on the day shift. Because he was back at work, Lade was not on a leave of absence, which is a prerequisite to application of the

7

no-loss-of-salary provision in section 4850. The board's construction of the statute simply ignores its plain language.

## DISPOSITION

The board's order denying reconsideration is annulled, and the matter is remanded for further proceedings consistent with the views expressed herein. The county shall recover its costs in this original proceeding. (Cal. Rules of Court, rule 8.493(a)(1)(B).)


         ROBIE_____, Acting P.J.


We concur:


BUTZ_____, J.


HOCH_____, J.

8