2014 COA 62

**CITY AND COUNTY OF DENVER, Petitioner,**

v.

**INDUSTRIAL CLAIM APPEALS OFFICE of the State of Colorado and Russell Andrews, Respondents.**

**Court of Appeals No. 13CA0928**

Colorado Court of Appeals, Div. V.

Announced May 8, 2014

Scott Martinez, City Attorney, Christian M. Lind, Assistant City Attorney, Denver, Colorado, for Petitioner

No Appearance for Respondent Industrial Claim Appeals Office

Law Office of O'Toole & Sbarbaro, P.C., Neil D. O'Toole, Denver, Colorado, for Respondent Russell Andrews

Opinion by JUDGE GRAHAM

¶ 1 This case raises a question of statutory interpretation that has not yet been addressed by any division of this court or by the Colorado Supreme Court: What constitutes "employment" for purposes of calculating the five-year time period under the "firefighter cancer presumption statute"? § 8–41–209, C.R.S.2013.

¶ 2 Petitioner here, the City and County of Denver (also referred to as the Denver Fire Department or Denver), seeks review of a final order of the Industrial Claim Appeals Office (Panel) which affirmed the order of an administrative law judge (ALJ) awarding claimant, Russell Andrews, medical benefits and temporary and permanent disability benefits. The Panel held claimant was entitled to the presumption of compensability created by section 8–41–209. The Panel included claimant's four years of service as a volunteer firefighter and emergency medical technician (EMT) for the Elbert Fire Protection District and his training at the Rocky Mountain Fire Academy when it calculated the five years of "employment as a firefighter" needed to apply the statutory presumption. Denver contends the Panel improperly calculated claimant's length of service and argues that the presumption should not have been applied to claimant's case. We agree with the

Panel's interpretation, however, and conclude that the presumption applies to claimant's claim. We therefore affirm the Panel's decision.

## I. Background

¶ 3 The facts in this case are not disputed. Claimant is a first grade firefighter for the Denver Fire Department. He was hired by Denver on October 1, 2004. Prior to taking his oath of office as a firefighter for Denver in February 2005, claimant completed a seventeen-week course at the Rocky Mountain Fire Academy as a probationary firefighter for Denver. Claimant also garnered four years' experience as a volunteer firefighter and EMT for the Elbert Fire Protection District before entering the fire academy.

¶ 4 In October 2009, claimant experienced flu-like symptoms, which were attributed to a virus. Although the flu-like symptoms dissipated, claimant continued to feel tired and weak, and, in the following months, lost about twenty pounds. After an episode of acute shoulder and abdominal pain in late January 2010, claimant sought treatment in the emergency room.

¶ 5 On February 12, 2010, claimant was diagnosed with chronic myelogenous leukemia (CML). He filed a claim for workers' compensation benefits under section 8–41–209 for his cancer treatments, invoking the statute's presumption that certain cancers contracted by firefighters with five or more years of service are compensable occupational diseases. Relying on the testimony of Denver's medical expert, the ALJ found the onset of claimant's CML occurred in November 2009.

¶ 6 At the hearing, Denver argued that claimant did not meet the statute's mandate of five-years of "employment as a firefighter" to trigger the presumption. The ALJ disagreed, however, finding that claimant's four years as a firefighter in Elbert County and his time spent at the fire academy could be included in the length-of-employment calculation, giving claimant more than the required five years' service. The Panel affirmed, and this appeal followed.

## II. Analysis

¶ 7 Denver contends that the ALJ and Panel misinterpreted section 8–41–209 (1) by including in the length of claimant's "employment as a firefighter" both (a) the entire length of time claimant served as volunteer firefighter and (b) his time training at the fire academy. It argues that it did not "employ" claimant as a firefighter, within the meaning of section 8–41–209(1), until he took his oath of office as a firefighter in February 2005. Therefore, it maintains, claimant does not meet the statutory requirement for five years of service, and the presumption is inapplicable to his situation. We disagree.

¶ 8 The firefighter cancer presumption statute provides:

(1) Death, disability, or impairment of health of a firefighter of any political subdivision *who has completed five or more years of employment as a firefighter,* caused by cancer of the brain, skin, digestive system, hematological system, or genitourinary system and resulting from his or her employment as a firefighter, shall be considered an occupational disease.

(2) Any condition or impairment of health described in subsection (1) of this section:

(a) Shall be presumed to result from a firefighter's employment if, at the time of becoming a firefighter or thereafter, the firefighter underwent a physical examination that failed to reveal substantial evidence of such condition or impairment of health that preexisted his or her employment as a firefighter; and

(b) Shall not be deemed to result from the firefighter's employment if the firefighter's employer or insurer shows by a preponderance of the medical evidence that such condition or impairment did not occur on the job.

§ 8–41–209 (emphasis added). The statute does not indicate what service qualifies when calculating the five-year period nor does it state how the service should be calculated. Denver urges us to read "employment" narrowly so as to exclude time not in service and time spent in training, and to permit home rule municipalities to define the term themselves. For the reasons set forth below, we decline to do so.

## A. Rules of Statutory Interpretation

¶ 9 The parties have not identified any case law addressing what activities satisfy the requirement that an individual complete five years of "employment as a firefighter" before the statutory presumption applies, and we have found none. *See* § 8–41–209(1). Consequently, we must turn to the rules of statutory construction and interpretation to determine the legislature's intended meaning.

¶ 10 As with all statutory construction, when we interpret a provision of the Workers' Compensation Act (Act), if its language is clear "we interpret the statute according to its plain and ordinary meaning." *Davison v. Indus. Claim Appeals Office,* 84 P.3d 1023, 1029 (Colo.2004). In addition, "when examining a statute's plain language, we give effect to every word and render none superfluous ... because '[w]e do not presume that the legislature used language idly and with no intent that meaning should be given to its language.'" *Colo. Water Conservation Bd. v. Upper Gunnison River Water Conservancy Dist.,* 109 P.3d 585, 597 (Colo.2005) (quoting *Carlson v. Ferris,* 85 P.3d 504, 509 (Colo. 2003) (some internal quotation marks omitted)).

¶ 11 While we are not bound by the Panel's interpretation or its earlier decisions, *Olivas–Soto v. Indus. Claim Appeals Office,* 143 P.3d 1178, 1180 (Colo.App.2006), and review statutory construction de novo, *Ray v. Indus. Claim Appeals Office,* 124 P.3d 891, 893 (Colo.App.2005), *aff'd,* 145 P.3d 661 (Colo.2006), we give deference to the Panel's reasonable interpretations of the statute it administers. *Sanco Indus. v. Stefanski,* 147 P.3d 5, 8 (Colo.2006); *Dillard v. Indus. Claim Appeals Office,* 121 P.3d 301, 304 (Colo.App.2005), *aff'd,* 134 P.3d 407 (Colo. 2006). In general, "an administrative agency's interpretation of its own regulations is ... entitled to great weight and should not be disturbed on review unless plainly erroneous or inconsistent with such regulations." *Jiminez v. Indus. Claim Appeals Office,* 51 P.3d 1090, 1093 (Colo.App.2002). The Panel's interpretation will therefore be set aside only "if it is inconsistent with the clear language of the statute or with the legislative intent." *Support, Inc. v. Indus. Claim Appeals Office,* 968 P.2d 174, 175 (Colo.App. 1998).

## B. Service as a Volunteer Firefighter

¶ 12 Denver acknowledges that the definition of "employee" set out in the Act expressly includes· "all members of volunteer fire departments." § 8–40–202(1)(a)(I)(A), C.R.S.2013. But, it points out, the same statutory definition applies "while said persons are actually performing duties as volunteer firefighters or as members of such volunteer rescue teams or groups." *Id.* Relying on this provision, Denver argues that only those days that claimant actually worked suppressing fires for the Elbert Fire Protection District—not the entire period during which he volunteered his skills and stood ready to serve—should be included in the calculation of his length of employment. However, it cites to no authority in support of its position.

¶ 13 The Panel rejected Denver's suggested interpretation. It observed that defining volunteer firefighters as "employees" while they are "performing duties ... is little more than a requirement that any injury an individual sustains must have ·arisen out of and in the course of the employee's volunteer employment if it is to be deemed compensable." In the Panel's view, then, the definition's limitation is merely another iteration of the general requirement that a worker be engaged in work-related activity when injured in order for the injury to be compensable. *See* § 8–41–301(1), C.R.S.2013. In contrast, the Panel noted, the five-year requirement serves a different purpose: to ensure claimants are involved in the firefighting process and thus periodically exposed to the carcinogens found in fires. We find the Panel's reasoning sensible and consistent with the legislative intent. *See Sanco Indus.,* 147 P.3d at 8; *Jiminez,* 51 P.3d at 1093.

¶ 14 By including volunteer firefighters in the definition of "employee," the legislature made clear its intent that injuries sustained by volunteer firefighters in the course and scope of their volunteer work be compensable under the Act. Nothing in the firefighter

cancer presumption statute suggests that the legislature intended to put the presumption beyond volunteer firefighters' reach. Given the express intent to include volunteer firefighters in the definition of employees, and the absence of any express exclusion of volunteer firefighters from the scope of the firefighter cancer presumption statute, in our view, the legislative purposes of both of these statutes can only be accomplished if a volunteer firefighter's entire time of service, not just the time of active engagement, is included when calculating length of service under section 8–41–209(1). If the time period of service for volunteer firefighters were calculated in the manner suggested by Denver— which, in this case, was at the rate of 19 days of service over 31 months or 7.6 days of service per year—it would take a volunteer firefighter 240 years to reach 5 years of active service. Thus, volunteer firefighters would be effectively excluded from the benefits of the presumption, an outcome at odds with the legislature's intent to include them in the definition of "employee."

¶ 15 The hypothetical situations Denver advances do not persuade us to reach a contrary conclusion. Although it is true that counting the time period a volunteer firefighter is available for service, rather than the number of days spent actively engaged in firefighting, may result in the presumption being applied to volunteers who have only fought one or two fires, we believe considering a volunteer firefighter's total volunteer time carries out the legislature's intent. In our view, Denver's position is undermined by the fact that: (1) the legislature relied on years of service, *not* number of fires fought by a firefighter, when establishing a limit on the presumption; and (2) the presumption of compensability for cancer suffered by a volunteer firefighter who had fought few, if any, fires can be rebutted by medical evidence demonstrating the lack of causality between the cancer and the volunteer firefighter's firefighting activities.

¶ 16 Accordingly, we agree with the Panel that length of firefighting service under section 8–41–209 should begin to run from the date on which a volunteer firefighter fights his or her first actual or training fire.

## C. Time Spent at the Fire Academy

¶ 17 Denver also contends that it did not employ claimant "as a firefighter" until he took his oath of office in February 2005. It argues that because probationary firefighters, as it refers to its recruits in its appointment letter, are not full-fledged firefighters, their time at the fire academy should not count toward the presumption's calculation of "employment as a firefighter." *See* § 8–41–209(1). It cites to no Colorado statutory or precedential case law in support of its position, however. Rather, it relies upon a California case, *City of Sacramento v. Workers' Compensation Appeals Board,* 94 Cal. App.4th 1304, 115 Cal.Rptr.2d 63 (2002). We are not persuaded by this California precedent.

¶ 18 In *City of Sacramento,* the California Court of Appeal held that "fire recruits do not engage in firefighting" and therefore are not entitled to "enhanced benefits" statutorily provided to firefighters because fire recruits are separately classified from firefighters. *Id.* at 66. Unlike the statute at issue here, though, firefighter and fire recruit are each specifically defined in the applicable California and Sacramento codes. Moreover, although the recruit was not entitled to "enhanced" benefits provided to firefighters, he was considered an employee and received standard workers' compensation benefits for his injuries. *Id.*

¶ 19 Here, in contrast, the question is not whether claimant was a firefighter or a recruit. The only question presented is whether claimant had "five or more years of employment as a firefighter" for purposes of section 8–41–209(1). The parties do not dispute that claimant was employed by Denver while he trained at the fire academy. Indeed, the record establishes that claimant's probationary employment period commenced October 1, 2004, when Denver hired him. It appears undisputed that Denver paid him from that date.

¶ 20 Denver has not pointed us to any regulation or code it may have defining "probationary firefighter." It does not argue that a "probationary firefighter" injured while at the fire academy would not receive

benefits. It points to no code or regulation excluding probationary firefighters from the realm of full-fledged firefighters. It claims only that time spent at the academy should not count toward "employment" under section 8–41–209(1).

¶ 21 The Panel expressly rejected this contention. The Panel noted that under Denver's reasoning, days training to be a volunteer firefighter counted, but "the several months spent training at the Denver Fire Academy are ignored." It also observed that probationary firefighters are exposed to numerous, albeit controlled, fires as part of their training. For these reasons, the Panel found Denver's analysis excluding time at the fire academy "not persuasive."

¶ 22 We find the Panel's interpretation to be reasonable and consistent with the legislative intent. Absent a showing that the legislature intended to exclude probationary firefighters, we perceive no basis to set aside the Panel's conclusion that time spent at the fire academy should be included in determining a firefighter's length of service. *See Sanco Indus.*, 147 P.3d at 8; *Jiminez*, 51 P.3d at 1093.

### D. Home Rule Authority to Define Firefighters' Employment

¶ 23 Lastly, Denver contends that its status as a home rule municipality gives it the right and authority to define "firefighter" and "probationary firefighter" as it sees fit. It argues that article XX, section 1 of the Colorado Constitution grants it broad powers to set the qualifications for its employees, including firefighters.

¶ 24 While we agree that home rule municipalities are granted broad authority to govern themselves and set the scope of their employees' duties, training, and qualifications, *see Fraternal Order of Police v. City & Cnty. of Denver*, 926 P.2d 582, 592 (Colo. 1996), Denver has not pointed to any definition within its code expressly defining "firefighter," "probationary firefighter," "firefighting recruit," or any other term that it may apply to firefighters-in-training. Its reliance on *City & County of Denver v. State,* 788 P.2d 764 (Colo.1990), is therefore misplaced.

¶ 25 In that case, Denver sought to uphold a provision in its City Charter requiring city employees to be residents of the city. The Colorado Supreme Court determined that the residency of city employees was a matter of local concern, preempting the state's attempt to prohibit residency requirements. Because residency was a matter of local concern, Denver, as home rule municipality, could "enact charter provisions or ordinances requiring employees to reside within the corporate limits of the municipality as a condition of continuing employment." *Id.* at 772.

¶ 26 Here, in contrast, Denver has not codified its definition of firefighter or probationary firefighter. It seeks to advance an interpretation that it favors here, but has not shown that the definition it puts forth is based on any previously stated qualifications. It relies on a scope of "firefighter" that benefits it here, without demonstrating that it applies these definitional differences uniformly, in other contexts, or for other purposes.

¶ 27 Section 8–41–209 makes no distinction between time served as a firefighter for different cities or districts. To the contrary, the statute makes clear that time spent employed as a firefighter "of any political subdivision" is included in calculating length of service. See § 8–41–209(1). Denver's insistence, then, that it should define whom it considers a firefighter in its employ risks conflicting with another city's or district's stated interpretation. Because time spent in different firefighting districts collectively counts as "employment" under the statute, allowing a home rule municipality to impose its own definition of firefighter could result in varying outcomes, by which one city may include recruits as firefighters while another excludes them. To avoid such inconsistency, the scope of "employment as a firefighter" under the firefighter cancer presumption statute must be considered a matter of state-wide concern which a home rule municipality may not supersede. Moreover, we note that workers' compensation benefits are generally considered a matter of state-wide concern. *See City & Cnty. of Denver*

*v. Thomas,* 176 Colo. 483, 486, 491 P.2d 573, 574 (1971).

### III.  Conclusion

¶ 28 Accordingly, we hold that the statute's requirement that a claimant demonstrate "five or more years of employment as a firefighter" before the statutory presumption of compensability applies, runs from the time an individual commences service as a volunteer firefighter or commences training at the fire academy.  Including this service when calculating claimant's length of employment, results in more than five years of "employment as a firefighter" under section 8–41–209(1).  Thus, the Panel correctly held that claimant was entitled to the statutory presumption of compensability for his CML.

¶ 29 The order is affirmed.

JUDGE BERNARD and JUDGE BERGER concur.